# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Gavin/Solmonese LLC.,

     Plaintiff,

     v.

Stephen L. Kunkel,

     Defendant.

Case No. 16-cv-1086

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

This case involves a dispute between Plaintiff, Gavin/Solmonese LLC ("Gavin/Solmonese" or "Plaintiff") and its former employee, Defendant Stephen L. Kunkel ("Kunkel" or "Defendant"). Specifically, Plaintiff brings five causes of action: (1) breach of fiduciary duty; (2) unjust enrichment; (3) tortious interference with contract; (4) tortious interference with prospective economic advantage; and (5) fraud. First Am. Compl. [19]. On March 23, 2016, Defendant filed a motion to dismiss Plaintiff's original Complaint. Def.'s Mot. Dismiss for Failure to State a Claim [16]. On April 21, 2016, Plaintiff filed its First Amended Complaint. First Am. Compl. [19]. On May 9, 2016, Defendant filed a motion to dismiss Plaintiff's First Amended Complaint. Def.'s Mot. Dismiss for Failure to State a Claim [24]. For the reasons explained below, that motion is granted in part and denied in part.

## I. Background

Plaintiff Gavin/Solmonese is a management consulting firm founded in 2012. First Am. Compl [19] ¶ 7. Plaintiff provides corporate "turnaround solutions and

organizational effectiveness strategies" to clients throughout the United States. *Id.* ¶ 8. As part of these services, Plaintiff evaluates a client's current business, provides an assessment, and formulates a preliminary action plan for implementing a turnaround strategy. *Id.* ¶ 9. Occasionally, Plaintiff also assists clients in executing its recommendations, either by providing interim management services or assisting with the sale of the business. *Id.* ¶ 10.

In approximately August 2013, Plaintiff hired Defendant as Managing Director in Chicago, Illinois. *Id.* ¶ 12. In this role, Defendant was a merely an "at-will" employee, and did not serve as a corporate officer or director. Def.'s Mot. Dismiss for Failure to State a Claim [24] 9. Nevertheless, from August 2013 until the date of Defendant's resignation, Plaintiff paid Defendant an annual salary ranging from $250,000 to $300,000, plus a discretionary bonus, and also paid for the cost of Defendant's health insurance. First Am. Compl. ¶¶ 14-16.

On or about September 27, 2013, Soo Tractor Sweeprake Co. ("Old Soo"), a steel fabrication company that produces farming equipment, retained Plaintiff to provide advisory services for its facilities in Sioux City, Iowa. *Id.* ¶ 18. Approximately one month later, on October 21, 2013, Old Soo retained Plaintiff to implement Plaintiff's recommendations. *Id.* Ex. A at 1. Old Soo and Plaintiff memorialized the details of their arrangement in a written Management Agreement. *Id.*

Under the Agreement, Plaintiff agreed to provide Old Soo an interim Chief Executive Officer ("CEO") to assist with the implementation of Plaintiff's

recommendations. *Id.* ¶ 21. Plaintiff selected Defendant to serve in this role. *Id.* Pursuant to the Agreement, Defendant performed such duties as an independent contractor, not an employee of Old Soo. *Id.* ¶ 22. As consideration, Old Soo paid Plaintiff $180,000 per month through December 31, 2013, and beginning on January 1, 2014, Old Soo paid Plaintiff an hourly rate totaling approximately $260,000 per month, plus necessary expenses. *Id.* ¶ 23. Between October 2013 and January 2015, Defendant served as interim CEO of Old Soo while Old Soo paid Plaintiff for his services. *Id.* ¶ 24.

Plaintiff claims that, in approximately December 2014, Old Soo and Plaintiff agreed to extend the terms of the Management Agreement through April 2015 (the "Extension Agreement"). *Id.* ¶ 26. Plaintiff further claims that, as part of the Extension Agreement, Old Soo asked Plaintiff to help sell Old Soo to a new owner. *Id.* According to Plaintiff, Old Soo agreed that if the sale of Old Soo was completed by April 30, 2015, Plaintiff would receive a Success Fee in addition to its hourly compensation. *Id.* ¶ 27. Plaintiff expected this Success Fee to total between $150,000 and $300,000. *Id.* ¶ 28. Plaintiff alleges that in approximately January 2015, pursuant to the Extension Agreement, Plaintiff helped secure a buyer for Old Soo, and that both parties anticipated the sale of Old Soo to be complete by the April deadline. *Id.* ¶ 29.

Plaintiff alleges that, while Defendant served as interim CEO of Old Soo, Defendant engaged in inappropriate activity with multiple male Old Soo employees without Plaintiff's knowledge. Specifically, Plaintiff claims that Defendant, among

other things: (1) made inappropriate comments to male Old Soo employees that the employees needed their "ass[es] spanked to become a man," *id*. ¶¶ 36, 85; (2) spanked male Old Soo employees on the buttocks, both bare-skinned and under clothes, inside and outside the workplace, *id*. ¶¶ 37, 41, 43, 85, 88-89, 91, 93; (3) engaged in nonconsensual sexual contact with one of the male Old Soo employees, *id*. ¶ 49; (4) promoted these employees to positions within Old Soo for which they were otherwise unqualified, *id*. ¶¶ 33, 38, 43, 83; (5) threatened to discharge one of the male employees if he failed to keep the spanking incidents a secret, *id*. ¶ 86; (6) gave these employees large sums of money to help with financial troubles and debt, *id*. ¶¶ 34-35, 42, 90; and (7) told one of the male employees that he could take as much time off as he needed and that the employee would continue to be paid. *Id*. ¶ 65. Plaintiff argues that Defendant's actions were taken "for Kunkel's perverse personal pleasure." Pl.'s Resp. to Def.'s Mot. Dismiss for Failure to State a Claim [27] 9.

Additionally, Plaintiff alleges that, once one of the male Old Soo employees reported Defendant's conduct in December 2014, Defendant repeatedly violated Plaintiff's instructions not to contact the male employee until Plaintiff completed an internal investigation. First Am. Compl. [19] ¶¶ 57-59, 63. Plaintiff further claims that Defendant told the male employee to either not speak with anyone about the incident or deny that Defendant engaged in inappropriate conduct. *Id*. ¶¶ 59, 67. Plaintiff claims that Defendant enticed the male employees' cooperation by promising to help the male employees with their debts or provide paid time off of

work. *Id.* ¶ 65, 70, 90. Due to Defendant's violation of Plaintiff's instructions, Plaintiff gave Defendant the option to be terminated or resign. *Id.* ¶ 74. Defendant resigned his employment with Plaintiff on January 30, 2015. *Id.* ¶ 75.

On January 28, 2015, Old Soo notified Plaintiff that it was terminating the Extension Agreement. *Id.* ¶ 76. Plaintiff claims that Old Soo's outside counsel told Plaintiff that Old Soo terminated the Extension Agreement due to Defendant's conduct. *Id.* ¶ 77. Old Soo ultimately sold its assets to a new owner.[1] *Id.* ¶ 79. Due to the termination of the Extension Agreement, however, Plaintiff did not receive the previously anticipated Success Fee. *Id.* ¶ 80.

In March and April 2015, the male Old Soo employees reportedly victimized by Defendant filed lawsuits against Old Soo, Plaintiff, and Defendant with the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission. *Id.* ¶¶ 81-82. Plaintiff claims it was forced to retain legal counsel to resolve these charges, as well as "other potential common law and statutory claims held by the employees." *Id.* ¶ 97.

Plaintiff also alleges additional, unrelated misconduct committed by Defendant during the course of his employment. First, Plaintiff claims Defendant diverted potential business opportunities from Plaintiff for Defendant's personal gain. *Id.* ¶ 99. Specifically, Plaintiff alleges that, during his employment, Defendant identified Tamarack Ski Resort ("Tamarack") as a potential client for Plaintiff. *Id.* ¶ 100. Plaintiff claims that Defendant ultimately reported the

---

[1] The pleadings are unclear as to whether the new owner was the same as that previously identified by Plaintiff. However, this fact is irrelevant for purposes of this motion.

Tamarack lead to be "dead," but then proceeded to join Tamarack's Board of Directors on his own behalf and perform the same types of services for Tamarack that Plaintiff performs for its clients. *Id.* ¶¶ 102, 104. Second, Plaintiff alleges that, on multiple occasions, Defendant falsified his expense reports by submitting duplicate reimbursement slips for the same expenses, requesting reimbursement for non-business expenses, and requesting reimbursement for meals in which Defendant did not partake. *Id.* ¶¶ 110-11.

As a result of Defendant's misconduct, Plaintiff alleges that it suffered lost fees and commissions from Old Soo (including the anticipated Success Free from the sale of Old Soo); compensation paid to Defendant when he was acting contrary to Plaintiff's interest; attorneys' fees and costs associated with defending the claims raised by Old Soo's male employees; expense reimbursements improperly paid to Defendant; and other money damages yet to be determined. *Id.* ¶ 112. Additionally, Plaintiff claims that Defendant's conduct tarnished its business reputation and caused damage to Plaintiff's future business prospects. *Id.* ¶ 113. Plaintiff claims that, since Defendant's misconduct came to light, it has not been able to secure any additional consulting work with any Iowa companies. *Id.* ¶ 117. Moreover, Plaintiff alleges that it missed out on referrals by Old Soo's outside counsel to two potential customers. *Id.* ¶¶ 114-16.

In response to Defendant's actions and their perceived fiscal consequences, Plaintiff brings the following causes of action: (1) breach of fiduciary duty; (2) unjust enrichment; (3) tortious interference with contract; (4) tortious interference

with prospective economic advantage; and (5) fraud. First Am. Compl. [19]. Defendant moves this Court to dismiss each claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Each claim will be discussed in turn.

## II.  Legal Standard

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). To survive a motion to dismiss, a complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In making this determination, the Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Id.*

## III.  Analysis

### a.  Count I:  Breach of Fiduciary Duty

In Count I, Plaintiff alleges that Defendant breached his fiduciary duties to act "with the utmost candor, care, loyalty, full disclosure, and good faith" towards Plaintiff by: (1) "engaging in inappropriate and improper conduct" towards Old Soo's

employees; (2) "attempting to hide this conduct from Old Soo and Gavin/Solmonese"; and (3) "usurping actual and/or potential corporate opportunities rightfully belonging to Gavin/Solmonese, without Gavin/Solmonese's knowledge or consent." First Am. Compl. [19] ¶¶ 123, 127.

Under Illinois law, to state a claim for breach of fiduciary duty, Plaintiff must allege that: (1) a fiduciary duty existed; (2) the duty was breached; and (3) the breach of the duty proximately caused damages. *Chicago Title Ins. Co. v. Sinikovic*, 125 F. Supp. 3d 769, 777 (N.D. Ill. 2015) (citing *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 709 (7th Cir. 2010)).

Citing *Instant Technology, LLC v. Defazio*, 40 F.Supp.3d 989, 1017 (N.D. Ill. 2014), *aff'd,* 793 F.3d 748 (7th Cir. 2015), Defendant argues that, as an at-will employee who was neither a corporate officer nor director, Defendant did not owe any fiduciary duty to Plaintiff. Def.'s Mot. Dismiss for Failure to State a Claim [24] 9. The Court finds this argument unpersuasive. First, Defendant misinterprets the *Defazio* opinion. *Defazio* merely found that, as "a general rule, in Illinois, only a corporate officer can be held liable *for soliciting employees for a new venture*." *Defazio*, 40 F.Supp.3d at 1017 (emphasis added). Allegations of this specific type of misconduct are absent here. Contrary to Defendant's revisions, *Defazaio* is silent on the issue of fiduciary duties of non-officers *generally*. Other courts, however, have long held that employees "who are not officers or directors are also bound by fiduciary obligations." *LCOR Inc. v. Murray*, No. 97 C 1302, 1997 WL 136278, at *7 (N.D. Ill. Mar. 20, 1997); *Laba v. Chicago Transit Auth.,* No. 14 C 4091, 2016 WL

147656, at *6 (N.D. Ill. Jan. 13, 2016) ("Illinois law recognizes that employees, as well as officers and directors, owe a duty of loyalty to their employer") (internal citations and quotations omitted). These fiduciary obligations include an undivided duty of fidelity and loyalty, which includes acting solely in the interest of the employer. *RKI, Inc. v. Grimes*, 177 F. Supp. 2d 859, 877 (N.D. Ill. 2001).

The Court finds equally unconvincing Defendant's argument that, at best, Defendant owed a fiduciary duty to *Old Soo*, not Plaintiff. Def.'s Reply to Mot. Dismiss for Failure to State a Claim [28] 3. For one, Plaintiff alleges that, throughout the relationship between Plaintiff and Old Soo, Defendant performed his duties as an independent contractor, not an employee of Old Soo. First Am. Compl. ¶ 22. During that same time period, Defendant received compensation (in the form of salary, discretionary bonuses, and healthcare) from Plaintiff, not Old Soo. *Id.* ¶¶ 14-16.

Defendant further claims that, even assuming the bare *existence* of a fiduciary duty, Defendant "could not have violated any such purported duty by engaging in the alleged misconduct at Old Soo Tractor." Def.'s Mot. Dismiss for Failure to State a Claim [24] 9. Specifically, Defendant asserts that conduct that "merely involves substandard job performance or bad behavior" does not "give rise to a breach of the duty of loyalty." *Id.* Once again, the Court finds this argument unavailing. Admittedly, the "scope of the duty of loyalty may vary depending on whether a corporate officer or an employee is involved," and courts have generally recognized that "self-dealing scenarios," rather than instances of "negligent or

substandard job performance," normally form the basis for viable breach of fiduciary duty claims. *Beltran v. Brentwood N. Healthcare Ctr., LLC*, 426 F. Supp. 2d 827, 831 (N.D. Ill. 2006). Nevertheless, Defendant's attempt to classify his alleged actions at Old Soo solely as the latter type of misconduct is unconvincing.

Courts applying Illinois law have construed "self-dealing scenarios" to include employees "improperly competing with their employer, soliciting the employer's customers, enticing co-workers away from the employer, diverting business opportunities" or "otherwise misappropriating the employer's property or funds." Additionally, this District has stated that an employee's fiduciary duties "are not limited to usurpation of the employer's interest, but extend to a myriad of infidelities and betrayals." *Robinson v. SABIS Educ. Sys., Inc.*, No. 98 C 4251, 2000 WL 343251, at *2 (N.D. Ill. Mar. 31, 2000)

In *Robinson,* SABIS hired Robinson as the Personnel Specialist at a school operated by SABIS. *Id* at *1. In that role, Robinson's duties included "overseeing SABIS's payroll and timekeeping operations, maintaining personnel records, managing the school's janitors, supervising the safety and security operations, and overseeing operation and maintenance of the school's facilities." *Id*. at *3. During her tenure, Robinson "hired a number of her friends and acquaintances to work for the school." *Id*. at *1. Over time, Robinson "placed friends and acquaintances whom she had hired as janitors and security guards on the payroll as 'permanent substitute teachers,'" which resulted in higher pay than those individuals "were entitled to receive." *Id*. Additionally, Robinson "paid employees in non-teaching

positions for work that she knew was never performed and caused one employee to be paid for a period when that employee was not even present at the school." *Id.* Finally, "Robinson permitted employees to claim an improper number of exemptions for income tax withholding purposes." *Id.* SABIS filed a breach of fiduciary claim against Robinson. *Id.* Later, Robinson moved dismiss, arguing that SABIS had "failed to allege the requisite elements of a breach of fiduciary duty claim." *Id.* Denying Robinson's motion, the court found that an agent "owes its principal a fiduciary duty to treat the principal with the utmost candor, care, loyalty and good faith, and may not act adversely to the employer's interests." *Id.* at *2 (citing *Burdett v. Miller,* 957 F.2d 1375, 1381 (7th Cir. 1992); *Dames & Moore,* 21 F.Supp.2d 817, 823 (N.D.Ill. 1998)). In the court's words:

> SABIS has alleged that Robinson breached her duties by engaging in a sort of ghost-pay-rolling scheme and income-tax-exemption scheme . . . It alleges that she breached her fiduciary duties by paying people for work that they did not do, knowingly misclassifying the job titles of certain individuals causing SABIS to pay artificially high salaries, and for allowing employees to take more tax exemptions that they were legally entitled to take. These actions are decidedly not in SABIS's interest and consequently constitute a breach of fiduciary duty. SABIS has thus stated a claim upon which relief can be granted.

*Id.* at *3.

Here, the misconduct allegedly committed by Defendant at Old Soo is akin to that set forth in *Robinson.* Like Robinson's scope of employment, Defendant's duties as interim CEO included day-to-day "operational and and/or financial management" of Old Soo, "the hiring and discharge of employees," and "other duties as are usually and customarily performed by a Chief Executive Officer." First Am. Compl. [19] Ex. A ¶¶ I.A.1, 5, 8. Just as SABIS alleged that Robinson "knowingly

misclassif[ied] the job titles of certain individuals causing SABIS to pay artificially high salaries," *Robinson*, 2000 WL 343251 at *1, Plaintiff alleges that Defendant promoted employees to positions within Old Soo for which they were otherwise unqualified. First Am. Compl. ¶¶ 33, 38, 43, 83. Furthermore, just as SABIS alleged that Robinson "caused one employee to be paid for a period when that employee was not even present at the school," *Robinson*, 2000 WL 343251 at *1, Plaintiff claims that Defendant told one of his male victims that he "could take as much time off as he needed and that [the employee] would continue to be paid." First Am. Compl. [19] ¶ 65. In short, accepting all well-pleaded allegations in the complaint as true, Defendant's alleged conduct at Old Soo, as in *Robinson*, is "decidedly not in [Plaintiff's] interest and consequently constitute[s] a breach of fiduciary duty." *Robinson*, 2000 WL 343251 at *1.

Regardless, Plaintiff's breach of fiduciary duty allegations are not merely confined to misconduct related to Old Soo's employees. Plaintiff also claims that, by performing services for Tamarack, Defendant usurped "actual and/or potential corporate opportunities rightfully belonging to Gavin/Solmonese, without Gavin/Solmonese's knowledge or consent." First Am. Compl. [19] ¶ 127. These actions allege the very solicitation of the employer's customers, and diversion of business opportunities traditionally considered to constitute fiduciary breaches. *See Beltran,* 426 F. Supp. 2d at 831. For these reasons, Count I sufficiently states "a

claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Defendant's motion as to Count I is denied.[2]

### b. Count II: Unjust Enrichment

In Count II, Plaintiff alleges that Defendant's "unfair competition with Gavin/Solmonese through his usurpation of corporate opportunities" from Tamarack "conferred a benefit on Kunkel," First Am. Compl. [19] ¶ 139, and that, as a result, "Gavin/Solmonese is entitled to disgorgement of any and all profits, earnings, and compensation attributable to Kunkel's wrongful actions." *Id.* ¶ 140. To state a cause of action based on a theory of unjust enrichment, Plaintiff must allege that: (1) Defendant has unjustly retained a benefit to Plaintiff's detriment; and (2) that Defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (citations omitted).

Defendant argues that Plaintiff fails to plead Count II with sufficient particularity because it neglects to identify "what the purported business was for which Tamarack hired Kunkel." Def.'s Mot. Dismiss for Failure to State a Claim [24] 17. However, Plaintiff specifically alleges that Defendant "performed services for and on behalf of Tamarack that were the very same types of services

---

[2] In their pleadings, the parties expend undue focus on Defendant's claim that Count I (as well as Counts III and IV) constitutes "an attempt at an end run around the prohibition against an employer seeking contribution or indemnification from its employee in EEOC cases." Def.'s Obj. to Pl.'s Sur-Reply [33] 1. Although Plaintiff's discussion of damages does reference, in part, "attorneys' fees and costs associated with defending and resolving the claims" by Old Soo and its male employees, it also references a myriad of other, independent damages, including lost fees and commissions from Old Soo, compensation paid to Defendant when he was acting contrary to Plaintiff's interest, and damage to Plaintiff's future business prospects. *Id.* ¶¶ 112-13. Therefore, while Defendant's argument may become relevant in a future discussion of proper damages, it is minimally probative at this stage of the proceedings and certainly not dispositive of Defendant's motion under Rule 12(b)(6).

Gavin/Solmonese performs for its customers and clients." First Amend. Compl. ¶ 104. Plaintiff further describes that Gavin/Solmonese provides corporate "turnaround solutions and organizational effectiveness strategies" to clients throughout the United States, including evaluation, assessment, and plan formulation. *Id*. ¶¶ 8-10. Plaintiff also claims that occasionally, Plaintiff assists clients in executing its recommendations, either by providing interim management services or assisting with the sale of a business. *Id*. ¶ 10. Combined, these descriptions provide Defendant adequate notice of the activities for which Tamarack allegedly hired Defendant.

Defendant also claims that Count II fails to identify what benefit, if any, Kunkel received. Def.'s Mot. Dismiss for Failure to State a Claim [24] 17. However, Plaintiff alleges that Defendant improperly received a "business opportunity" on Tamarack's Board of Directors that included "current or future benefits." First Amend. Compl. ¶ 109. Plaintiff also references disgorgement of "any and all profits, earnings, and compensation." *Id*. ¶ 140. Federal Rule of Civil Procedure 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief." *Twombly*, 550 U.S. at 555. A complaint "does not need detailed factual allegations," but only those necessary "to raise a right to relief above the speculative level" and "give the defendant fair notice" of what the claim is, "and the grounds upon which it rests." *Id*. at 555-56. A suit "should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Via v. LaGrand*, No. 03 C 3278, 2004 WL 2554447, at *6 (N.D. Ill. Nov. 10,

2004). Here, Plaintiff alleges that during his employment, Defendant identified Tamarack as a potential client for Plaintiff. First Am. Compl. ¶ 100. Plaintiff claims that, despite this potential, Defendant falsely reported the Tamarack lead to be "dead," surreptitiously joined Tamarack's Board of Directors, performed services, and benefitted on his own behalf. *Id*. ¶¶ 102, 104. Accepting, as we must, all well-pleaded allegations as true and drawing all reasonable inferences in favor of Plaintiff, this claim provides fair notice to Defendant. Therefore, Defendant's motion as to Count II is denied.

### c. Count III: Tortious Interference with Contract

In Count III, Plaintiff alleges that, despite possessing "actual and/or constructive knowledge" of the Management Agreement between Plaintiff and Old Soo, Plaintiff "intentionally interfered" with the Agreement by "engaging in inappropriate conduct with Old Soo employees that Kunkel knew or should have known would cause Old Soo to terminate its agreement with Gavin/Solmonese." First Am. Compl. [19] ¶¶ 147-49.

Under Illinois law, the elements of tortious interference with contract are: (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by defendant's wrongful conduct; and (5) damages. *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 527-28 (7th Cir. 2003)

(quoting *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.,* 545 N.E.2d 672, 676 (Ill. 1989)).

Defendant claims that Plaintiff fails to allege that Defendant "purposefully" caused a breach of contract by Old Soo. Def.'s Mot. Dismiss for Failure to State a Claim [24] 12. Specifically, Defendant argues that, according to the Complaint, Defendant's stated purpose "was not to interfere with a business contract or potential business relationship, but rather was personal to the alleged relationships with the two men." *Id.* at 10. The Court agrees. Liability "for interference with contracts and prospective contractual relations developed in the field of *intentional* torts." Restatement (Second) of Torts § 766C (Am. Law Inst. 1979) (emphasis added). Therefore, inherent "in the rule of liability for procuring a breach of contract is the requirement of an intention *to effect such result* on the part of the defendant." 26 A.L.R.2d 1227 (1952) (emphasis added). To date, "there has been no general recognition of any liability for a *negligent* interference," whether it is interference "with a third person's performance of his contract with the plaintiff," "with the plaintiff's performance of his own contract," or "with the plaintiff's acquisition of prospective contractual relations." Restatement (Second) of Torts § 766C (Am. Law Inst. 1979) (emphasis added).

This general tenet of tort law holds true in Illinois. In *Great Central Insurance Company v. Insurance Services Office, Inc.*, Great Central specialized in writing liability insurance for supermarkets. 74 F.3d 778, 780 (7th Cir. 1996). Insurance Services Office ("ISO"), a service provider to the liability insurance

industry, calculated insurance rates necessary to cover the risk of various insured activities. *Id.* In the early 1980s, ISO simplified the rate structure of its Comprehensive General Liability policy. *Id.* at 781. As part of the simplification, ISO combined what had been two separate rate classifications, one for grocery stores and one for supermarkets, into a single classification. *Id.* ISO filed its new rates with the various state commissions, which went into effect by the middle of 1986. *Id.* Shortly thereafter, Great Central realized that ISO's new method yielded much lower rates (and thus profits) than under the old system. *Id.* Great Central protested to ISO, which agreed and began to rescind the new rates. *Id.* at 781-82. However, it was not until 1994 that the new rates were withdrawn in every state in which they had been filed. *Id.* at 782. In the interim, Great Central filed its own higher rates. *Id.* Its competitors, less specialized in the field of supermarket liability, did not. *Id.* As a result, Great Central lost business. *Id.*

Great Central sued ISO, in part under a theory of intentional inference with contract. *Id.* at 784. Specifically, Great Central argued that, "by its mistake and its heel dragging ISO disrupted Great Central's contractual relations with its supermarket customers." *Id.* The district court granted summary judgment in favor of the ISO. *Id.* at 778. Affirming the ruling, the Seventh Circuit assumed that both "the acknowledged original mistake in combining the grocery store and supermarket rate classifications" and "the slow pace at which ISO corrected the mistake" were negligent. *Id.* at 782. Nevertheless, the court reiterated that "the tort of interfering with contract is an *intentional* tort." *Id.* at 784 (citing W. Page

Keeton et al., *Prosser and Keeton on the Law of Torts* § 129 (5th ed. 1984))
(emphasis added). Because ISO "had no intention of causing Great Central to lose
any of its customers," tortious interference did not apply. *Id.* (emphasis added).
While the court acknowledged that ISO "acted negligently, and as a remote
consequence [Great Central] lost some of [its] own customers," it expressly declined
to expand "the tort of interference with contract to include negligent interference."
*Id.* at 784, 786. According to the court, it "would be reckless to predict that the
Supreme Court of Illinois, were it to hear such a case, would recognize (more
realistically, would create) such a tort." *Id.* at 786.

Here, Plaintiff asks this Court to recognize the very tort rejected in *Great
Central Insurance*. In Count III, Plaintiff alleges that Defendant "intentionally
interfered" with the Management Agreement between Plaintiff and Old Soo by
"engaging in inappropriate conduct with Old Soo employees that Kunkel *knew or
should have known* would cause Old Soo to terminate its agreement with
Gavin/Solmonese." First Am. Compl. [19] ¶¶ 147-49 (emphasis added). Such
language sounds in negligence, not intent. Even though Defendant's acts were
themselves intentional, Plaintiff fails to allege any facts indicating that the *objective
or purpose* of Defendant's acts with Old Soo employees was to cause Old Soo to
terminate its agreement with Plaintiff. To the contrary, Plaintiff acknowledges that
Defendant's actions were "taken only for [Defendant's] perverse personal pleasure."
Pl.'s Resp. to Def.'s Mot. Dismiss for Failure to State a Claim [27] 9. Furthermore,
Plaintiff admits that Defendant took multiple affirmative steps to *hide* his conduct

from Old Soo and Plaintiff—the very parties that Plaintiff claims Defendant intended to influence.  *Id*.  These contradictions prevent this Court from drawing a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.  While Defendant's conduct may be, as Plaintiff's argue, "wrongful," "abusive," or "unlawful," Pl.'s Resp. to Def.'s Mot. Dismiss for Failure to State Claim [27] 9-10, it is not *purposeful*, as least as it relates to any interference with Plaintiff's contract with Old Soo.  Therefore, Defendant's motion as to Count III is granted.[3]

### d. County IV:  Tortious Interference with Prospective Economic Advantage

In Count IV, Plaintiff alleges that it possessed "a reasonable expectancy of continuing its relationship with Old Soo" and receiving "its hourly fees for all services performed" and "the agreed-upon Success Fee" upon "closing of the sale of Old Soo."  First Am. Compl. [19] ¶¶ 155-56.  Additionally, Plaintiff claims it possessed a reasonable expectancy of entering into future business relationships with *other* clients based on referrals from Old Soo.  *Id*. ¶ 157.  Plaintiff alleges that, "despite having knowledge of Gavin/Solmonese's continued expectancies, Kunkel purposefully and without justification interfered with Gavin/Solmonese's reasonable expectancies" by "engaging in inappropriate conduct with Old Soo employees that

---

[3] In its motion, Defendant raises several other challenges to Count III:  (1) Old Soo "never breached, and is not even alleged to have breached," the Management Agreement with Plaintiff; (2) "there is no allegation in the First Amendment Complaint, nor any fact suggesting, that Kunkel was aware of the Purported Extension Agreement"; and (3) as the interim CEO of Old Soo, Defendant "was effectively a party to the Management Agreement," and a "claim of tortious interference does not lie where a party interferes with his own contract." Def.'s Mot. Dismiss for Failure to State a Claim [24] 12, 13, 13 n. 3.  Given its ruling regarding the lack of any alleged intent, this Court need not address these supplemental arguments.

Kunkel knew or should have known would cause Old Soo to terminate Gavin/Solmonese's services, would deprive Gavin/Solmonese of a valuable referral source and would interfere with Gavin/Solmonese's future business opportunities." *Id.* ¶ 163.

As with Count III, Defendant asserts that Plaintiff's allegations fail to support a claim that Defendant's alleged conduct "was designed to induce a breach, or to deprive Gavin/Solmonese of future business." Def.'s Mot. Dismiss for Failure to State a Claim [24] 14. For the reasons discussed above, this Court agrees. Under Illinois law, to succeed in an action for tortious interference with prospective economic advantage, Plaintiff must prove: (1) Plaintiff's reasonable expectation of a future business relationship; (2) Defendant's knowledge of that expectation; (3) *purposeful* interference by Defendant that prevents Plaintiff's legitimate expectations from ripening; and (4) damages. *Ali v. Shaw*, 481 F.3d 942, 944 (7th Cir. 2007). Like tortious interference with contract, this cause of action "is a 'purposely' caused tort, and therefore, a plaintiff must set forth facts which suggest that defendant acted *with the purpose* of injuring plaintiff's expectancies." *J. Eck & Sons, Inc. v. Reuben H. Donnelley Corp.*, 572 N.E.2d 1090, 1093 (Ill. 1991) (emphasis added). Because Plaintiff's language in Count IV ("by engaging in inappropriate conduct with Old Soo employees that Kunkel *knew or should have known* . . . would deprive Gavin/Solmonese of a valuable referral source and would interfere with Gavin/Solmonese's future business opportunities") closely mirrors

that in Count III, the former suffers from the same flaw as the latter. Therefore, Defendant's motion as to Count IV is granted.[4]

### e. Count V: Fraud

In Count V, Plaintiff alleges that Defendant "engaged in a scheme to defraud Gavin/Solmonese for Kunkel's own personal gain." First Am. Compl. ¶ 173. Specifically, Plaintiff claims that Defendant "falsely stated that he was entitled to reimbursement from Gavin/Solmonese with the intent to fraudulently induce Gavin/Solmonese into paying Kunkel for business expenses that were improperly charged multiple times or fabricated, and Kunkel's statements did in fact fraudulently induce Gavin/Solmonese into paying Kunkel for these improperly charged business expenses." *Id.* ¶ 175.

Defendant argues that Plaintiff's claim is "*prima facie* defective" because it fails to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that, in "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires Plaintiff "to state 'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (quoting *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992)).

---

[4] Given this ruling, the Court need not address Defendant's alternative argument that "Plaintiff has not, and cannot allege any reasonable expectation of future business." Def. Mot. Dismiss for Failure to State a Claim [24] 14.

This means "the who, what, when, where, and how:  the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

Rule 9(b) "effectively carves out an exception to the otherwise generally liberal pleading requirements under the Federal Rules." *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co. of Chicago*, 927 F.2d 988, 992 (7th Cir. 1991).  The particularity requirement "is designed to discourage a 'sue first, ask questions later' philosophy." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (quoting *Berman v. Richford Indus., Inc.,* 78 Civ. 54, 1978 WL 1104, at *5 (S.D.N.Y. July 28, 1978)).  Particularity "compels the plaintiff to provide enough detail to enable the defendant to riposte swiftly and effectively if the claim is groundless.  It also forces the plaintiff to conduct a careful pretrial investigation and thus operates as a screen against spurious fraud claims." *Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 749 (7th Cir. 2005).

The Seventh Circuit interprets Rule 9(b) with flexibility.  *Goldberg v. Rush Univ. Med. Ctr.*, 929 F. Supp. 2d 807, 818 (N.D. Ill. 2013).  The precise level of particularity required depends upon the facts of the case.  *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014).  This flexibility notwithstanding, mere conclusory allegations "do not satisfy the requirements of Rule 9(b) and subject the pleader to dismissal." *Veal v. First Am. Sav. Bank*, 914 F.2d 909, 913 (7th Cir. 1990).  At the same time, the requirements of Rule 9(b) "are not absolute or unbounded; defendants need not be given a 'pretrial memorandum containing all

the evidentiary support for plaintiff's case.'" *Koulouris v. Estate of Chalmers*, 790 F. Supp. 1372, 1374 (N.D. Ill. 1992) (quoting *Uniroyal Goodrich Tire Co. v. Mut. Trading Corp.*, 749 F. Supp. 869, 872 (N.D. Ill. 1990)). Rule 9(b) mandates "only that the plaintiff identify the alleged misrepresentations, not actually prove that the statement was false." *Adams v. Pull'r Holding Co., LLC.*, No. 09C7170, 2010 WL 1611078, at *1 (N.D. Ill. Apr. 20, 2010).

Here, Plaintiff's fraud allegations fail to satisfy the Rule 9(b) standard. Removing purely legal or conclusory statements, the *circumstances* detailing Plaintiff's fraud allegations are confined to four paragraphs of Plaintiff's 183 paragraph First Amended Complaint:

> Gavin/Solmonese's employees are required to submit documentation of business expenses through Gavin/Solmonese's time and expense reporting program in order to receive reimbursement of these business expenses. Employees are also required to indicate the particular client to which each business expense relates.

First Am. Compl. [19] ¶ 174.

> Kunkel . . . falsified his expense reports, by, among other things, submitting duplicate slips for the same expenses, causing him to receive multiple reimbursements for the same expense.

*Id.* ¶ 110.

> Upon information and belief, Kunkel also submitted false reimbursement requests, by, among other things, requesting reimbursement for non-business expenses and for meals in cities on a date that Kunkel could not have been in the stated city.

*Id.* ¶ 111.

> Kunkel . . . intentionally concealed his fraudulent scheme by billing these expenses to different expense codes so that the entries would not

appear next to each other when Gavin/Solmonese was reviewing the monthly expense reports.

*Id.* ¶ 179.

On these facts, Plaintiff fails to adequately assert the time and place of Defendant's fraudulent activity. Indeed, Plaintiff fails to allege *any* specific timeframe for Defendant's alleged fraud; Plaintiff merely alleges the approximate begin and end dates of Defendant's overall employment, rather than dates drawn from the allegedly fraudulent expense reports submitted by Defendant over the relevant 17-month period.

A central purpose of Rule 9(b) is "to ensure that the party accused of fraud, a matter implying some degree of moral turpitude and often involving a wide variety of potential conduct, is given adequate notice." *Lachmund v. ADM Inv'r Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999). Defendant has received no such notice here. For example, Plaintiff alleges that Defendant submitted "duplicate slips for the same expenses." First Am. Compl. ¶ 170. What slips? Plaintiff further alleges that Defendant requested reimbursement "for non-business expenses." *Id.* ¶ 111. What expenses? Plaintiff claims that Defendant submitted reimbursement "for meals in cities on a date that Kunkel could not have been in the stated city." *Id.* Which cities? What dates? Even though the law does not require evidentiary detail at this stage, it does require more specifics than can be found in the allegations here.

Finally, one of the paragraphs detailing the circumstances of Plaintiff's allegations is pled "on information and belief." *See id.* Allegations based merely upon "information and belief" "won't do in a fraud case—for 'on information and

belief' can mean as little as "rumor has it that . . . ." *U.S. ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016).  In sum, Plaintiff's "faint sketch of fraud is insufficient." *Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1043 (N.D. Ill. 2007).  Rule 9(b) demands more.  Therefore, Defendant's motion as to Count V is granted.

### f.  Plaintiff's Request to Amend

In its response to Defendant's motion, Plaintiff states that, "should the Court "find dismissal of any of Plaintiff's claims to be warranted, Plaintiff respectfully requests the opportunity to cure any defects by amending its complaint." Pl.'s Resp. to Def.'s Mot. Dismiss for Failure to State a Claim [27] 15 n. 1.  The decision to grant or deny a motion to file an amended pleading "is a matter purely within the sound discretion of the district court." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008).  Federal Rule of Civil Procedure 15(a) provides that if a party is not entitled to amend a pleading as a matter of course, it may amend "with the opposing party's written consent or the court's leave."  The court "should freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2).  Although the rule reflects a "liberal attitude towards the amendment of pleadings, courts in their sound discretion may deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile." *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848-49 (7th Cir. 2002).

On the record currently before this Court, it would be futile for Plaintiff to attempt to amend Counts III and IV. Futility is measured in part "by the capacity of the amendment to survive a motion to dismiss." *Duthie v. Matria Healthcare, Inc.*, 254 F.R.D. 90, 94 (N.D. Ill. 2008). Plaintiff's acknowledgment that Defendant's actions were taken for Defendant's personal pleasure, combined with its failure to allege, in either its original or amended complaint, facts to show that Defendant purposely intended to harm Plaintiff's contractual rights or business expectancies, indicates that no amendment will overcome the legal deficiencies in Counts III and IV. Therefore, Plaintiff's motion to amend its complaint as it relates to Counts III and IV is denied.

Plaintiff is, however, granted leave to amend Count V to meet the standards of Rule 9(b). Plaintiff has not unduly delayed in filing its request to amend. This case is still in its earliest stages, and the Court possesses no evidence that Defendant would suffer undue prejudice. Finally, given Plaintiff's presumed possession of the allegedly fraudulent expense reports submitted by Defendant, amendment of Count V is likely to cure its current defects.

## IV.     Conclusion

For the reasons discussed above, Defendant's Motion to Dismiss for Failure to State a Claim [24] is granted as to Counts III, IV, and V, and denied as to Counts I and II.  Plaintiff is granted leave to amend Count V to meet the standards of Rule 9(b).

IT IS SO ORDERED

Dated:  July 6, 2016                              Entered:

_____
John Robert Blakey
United States District Judge