IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GAVIN/SOLMONESE LLC., a Delaware Limited Liability Company | |
| Plaintiff, | Case No.: 1:16-CV-01086 |
| v. | Judge John R. Blakey |
| STEPHEN L. KUNKEL, an individual | |
| Defendant. | |

**DEFENDANT'S FIRST AMENDED ANSWER AND
AFFIRMATIVE DEFENSES TO THE FIRST AMENDED COMPLAINT**

Defendant, Stephen L. Kunkel ("Defendant" or "Kunkel"), by and through his attorneys, hereby submits his First Amended Answer and Affirmative Defenses to Plaintiff Gavin/Solmonese LLC ("Plaintiff" or "Gavin/Solmonese")'s First Amended Complaint, and states as follows:

**INTRODUCTION**

1.      In September 2013, Gavin/Solmonese hired Stephen Kunkel, a 50+ year-old seasoned executive turnaround specialist, to assist Gavin/Solmonese's corporate clients with their business needs. Gavin/Solmonese assigned Kunkel to act as interim CEO of client Soo Tractor Sweeprake, a farm equipment parts producer located in Sioux City, Iowa. While assigned on that engagement, Kunkel apparently promoted young male employees to positions for which they were not qualified, materially increased their pay and benefits, provided them with gifts and loans, paid their personal debts, and from May 2014 through December 2014, on multiple occasions made them take their pants down and physically spanked their naked

buttocks using belts, paddles and his hands. Based on their allegations, as well as the photographs and video produced by one of these young men, it appears the spankings caused alleged physical pain and injury and alleged emotional distress and humiliation. As a result of Kunkel's conduct, Soo Tractor Sweeprake terminated its $250,000+ per month engagement with Gavin/Solmonese, and two of the young men brought sexual harassment and discrimination claims against Gavin/Solmonese and Soo Tractor based on Kunkel's conduct. Gavin/Solmonese has suffered damages in excess of $1 million in lost revenue, damage to reputation and costs incurred in defending and resolving the claims brought against it. Gavin/Solmonese brings this suit to hold Kunkel financially liable for these damages and seeks punitive damages in light of the willful and wanton nature of Kunkel's conduct.

**ANSWER**: For the most part, the allegations in Paragraph 1 contain argument and speculation and purport to state legal conclusions to which no answer is required. Defendant admits only that, "In September 2013, Gavin/Solmonese hired Stephen Kunkel, a 50+ year-old seasoned executive turnaround specialist, to assist Gavin/Solmonese's corporate clients with their business needs. Gavin/Solmonese assigned Kunkel to act as interim manager of client Soo Tractor Sweeprake, a farm equipment parts producer located in Sioux City, Iowa." To the extent the other allegations in Paragraph 1 state something other than legal conclusions they are denied.

**PARTIES**

2.    Plaintiff Gavin/Solmonese LLC is a Delaware limited liability company with its principal place of business in Wilmington, Delaware.

**ANSWER**: Admitted.


3.    Defendant Stephen L. Kunkel is an individual who formerly was employed by

Gavin/Solmonese as Managing Director in Chicago, Illinois. Kunkel is a resident and citizen of the State of Illinois.

**ANSWER**:    Admitted, but only to the extent that Defendant was "Managing Director" in title only, and was not running the Chicago office.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a). The parties are citizens of different states, and the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of interest and costs.

**ANSWER**:  Defendant denies that the amount in controversy exceeds the sum or value of $75,000. The other allegations in Paragraph 4 are admitted.

5.    This Court has personal jurisdiction over Kunkel because Kunkel is a citizen of the State of Illinois and resides within this district.

**ANSWER**:    Admitted.

6.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and/or 28 U.S.C. § 1391(b)(3).

**ANSWER**:    Admitted.

## FACTUAL ALLEGATIONS

A.    **Overview of Gavin/Solmonese.**

7.      Gavin/Solmonese is a management consulting firm founded in 2012.

**ANSWER**:    Defendant lacks knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 and on that basis denies this allegation.


8.      Gavin/Solmonese provides a variety of corporate turnaround solutions and organizational effectiveness strategies to a broad range of clients throughout the United States. Specifically, Gavin/Solmonese's services include litigation consulting, corporate recovery, turnarounds and interim management, mergers and acquisitions, and bankruptcy and fiduciary services.

**ANSWER**:    Defendant lacks knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 8, in particular whether Plaintiff provides a broad range of services throughout the United States and whether Plaintiff has expertise in the claimed practice areas, and on that basis, denies these allegations.


9.      Gavin/Solmonese is often retained by companies faced with financial difficulties to provide "turnaround" services. As part of these services, Gavin/Solmonese evaluates the client's current business, provides an assessment of the distressed business and turnaround strategies available, formulates a preliminary action plan for implementing the turnaround strategy, assesses financing and organizational resources, and recommends changes as necessary.

**ANSWER**:    Defendant lacks knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 9, in particular whether Plaintiff is "often" retained and whether Plaintiff has expertise in the claimed practice areas, and on that basis denies the

allegations.

10.     Gavin/Solmonese also assists clients in implementing these recommendations, either by providing interim management services or assisting with the  sale of the business.

**ANSWER**:     Defendant lacks knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 and on that basis denies the allegations.

11.     Gavin/Solmonese's professional employees each have significant experience  in advising companies on financial, organizational, and restructuring issues, as well as implementation of strategies. These professionals often step in and serve as interim management to Gavin/Solmonese's clients in order to implement recommended changes.

**ANSWER**:     Defendant lacks knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 and on that basis denies the allegations.

**B.**     **Kunkel's Employment With Gavin/Solmonese.**

12.      In or around August 2013, Gavin/Solmonese extended an offer of  employment to Kunkel as Managing Director in Chicago, Illinois, contingent upon a  successful background check.

**ANSWER**:   Admitted.

13.     At the time, Kunkel's resume indicated that he had over 13 years of executive leadership experience, including 8 years of experience in interim management and  corporate restructuring.  Kunkel's accolades also included service on the boards of directors   of several

5

private companies and philanthropic service for religious and other charitable organizations. Kunkel also came to Gavin/Solmonese from another well-respected turnaround firm and had previously worked at other well-known and respected turnaround firms.

**ANSWER**:   Admitted.

14.    From August 2013 through March 2014, Gavin/Solmonese paid Kunkel an annual salary of $250,000, plus discretionary bonus.

**ANSWER**:   The allegations of Paragraph 14 are admitted in that Plaintiff paid Defendant an annual salary of $250,000 for the designated period plus a bonus that was based on a formula. The allegations of Paragraph 14 are otherwise denied.

15.    Beginning April 1, 2014, Gavin/Solmonese paid Kunkel an annual salary of $300,000, plus discretionary bonus.

**ANSWER**:    The allegations of Paragraph 15 are admitted in that Plaintiff paid Defendant an annual salary of $300,000 for the designated period plus a bonus that was based on a formula. The allegations of Paragraph 15 are otherwise denied.

16.    Gavin/Solmonese also paid for the cost of Kunkel's health insurance, which totaled approximately $850 per month, and Kunkel was reimbursed for all business-related expenses pursuant to Gavin/Solmonese's expense reimbursement policy.

**ANSWER**:    Defendant admits that Gavin/Solmonese paid for the cost of Kunkel's health insurance, the total cost for which Defendant lacks knowledge sufficient to form a belief as to the truth of the allegation.  Defendant denies that he was reimbursed for "all" business-related

expenses.

17.    At all relevant times, Kunkel's employment with Gavin/Solmonese was at-will.

**ANSWER**:   Admitted.

**C.    Soo Tractor Retains Gavin/Solmonese's Services.**

18.    On or around September 27, 2013, Soo Tractor Sweeprake Co. (d/b/a Radius Steel) ("Old Soo"), a steel fabrication company that produces farming equipment, retained Gavin/Solmonese to provide advisory services to address the then-current business and financial difficulties Old Soo was experiencing in its business generally and at its facilities in Sioux City, Iowa (the "Facility").

**ANSWER**:   Defendant admits that in or around September 27, 2014, Soo Tractor hired Plaintiff to do an assessment for a set fee.  Defendant denies that Plaintiff was retained at that time to provide advisory services to address the then-current business and  financial difficulties Old Soo was experiencing in its business generally and at its facilities in  Sioux City, Iowa.

19.    Gavin/Solmonese secured this engagement based on a referral by a business contact and previous referral source of Ted Gavin's (a founder of Gavin/Solmonese), with whom Mr. Gavin had worked on a successful engagement previously.

**ANSWER**:   The allegations contained in Paragraph 19 are denied.

20.    After a telephonic interview between Mr. Gavin, Mr. Kunkel, and Old Soo's

then-President and outside legal counsel, Old Soo engaged Gavin/Solmonese to evaluate Old Soo's financial and operating situation, assess alternatives in addressing changes in sales revenue, and provide Old Soo with an assessment of business, operational, and financial risks and options to restore Old Soo's business to profitability.

**ANSWER**: The allegations contained in Paragraph 20 are denied.

21. Old Soo thereafter retained Gavin/Solmonese to provide an interim Chief Executive Officer and Chief Financial Officer to assist in implementing Gavin/Solmonese's recommendations, with Kunkel acting as interim CEO and Ross Waetzman ("Waetzman"), another Gavin/Solmonese employee, acting as interim CFO.

**ANSWER**: Defendant admits that Gavin/Solmonese was hired as the manager of Soo Tractor, after the Defendant presented his findings to the Board of Directors of Soo Tractor on or about October 21, 2013. Defendant admits that he was, thereafter made CEO of Soo Tractor by resolution of the Board of Directors of Soo Tractor. The remaining allegations contained in Paragraph 21 are otherwise denied.

22. Pursuant to the parties' Management Agreement (attached hereto as **Exhibit A**), the parties agreed that Gavin/Solmonese, Kunkel, and Waetzman would perform such services as independent contractors, not employees, of Old Soo.

**ANSWER**: Admitted.

23. Old Soo agreed to pay Gavin/Solmonese $180,000 per month through December 31, 2013, and beginning January 1, 2014, Gavin/Solmonese charged Old Soo an

hourly rate that resulted in average monthly billings of approximately $260,000 per month, plus necessary expenses.

**ANSWER**:    Admitted.


24.    Between October 2013 and January 2015, Kunkel and Waetzman performed services for Old Soo, and Old Soo paid Gavin/Solmonese millions of dollars for these services.

**ANSWER**:    Admitted.


25.    Both Kunkel and Waetzman updated Old Soo's owners and management of developments directly and regularly. Old Soo's outside attorneys and owners routinely informed Gavin/Solmonese that Kunkel and Waetzman were performing well and were having success in their efforts to turn around the company and prepare it for sale.

**ANSWER**:    Defendant lacks knowledge sufficient to form a belief as to the truth of whether Waetzman or Old Soo's attorney's routinely updated Plaintiff.    The allegations contained in Paragraph 25 are otherwise admitted.


26.    In or around December 2014, Old Soo and Gavin/Solmonese agreed to extend the terms of the Management Agreement through April 2015, and Old Soo's owners asked Gavin/Solmonese to help sell Old Soo to a new owner.

**ANSWER**:    The allegations of Paragraph 26 are denied.


27.    At this same time, Old Soo agreed that upon closing of the sale,

Gavin/Solmonese was set to receive the Success Fee set forth in Section VI(E)(2) of the Management Agreement if the sale was completed by April 30, 2015.

**ANSWER**:    The allegations of Paragraph 27 are denied.

28.    Gavin/Solmonese expected that the Success Fee would total between $150,000 and $300,000. Gavin/Solmonese and Old Soo also agreed that Old Soo would continue paying Gavin/Solmonese's hourly fees pursuant to the Management Agreement through the closing of the sale.

**ANSWER**:    Defendant lacks information sufficient to form a belief as to the truth of what Gavin/Solmonese expected or believed; however, Defendant otherwise denies that Gavin/Solmonese had any rights to any success fees after the dates specified in the original Management Agreement and on that basis the allegations of Paragraph 28 are denied.

29.    Beginning in or around January 2015, Gavin/Solmonese, in addition to its managerial duties, undertook the process to solicit potential purchasers, perform any  necessary due diligence, and helped secure a buyer of Old Soo. The parties anticipated that  sale would be completed in April 2015.

**ANSWER**:    The allegations of Paragraph 29 are denied.

**D.**    **Kunkel's Interactions with Old Soo Employee, McMichael Mierau.**

30.    Although Gavin/Solmonese did not know it at the time, upon information and belief, while acting as interim CEO of Old Soo, Kunkel took a special interest in several of Old Soo's young male employees, including McMichael Mierau ("Mierau"), an assembly

worker, and Alex Peterson ("Peterson"), a painter/powder coater on the assembly line.

**ANSWER**:   Defendant admits that McMichael Mierau ("Mierau"), w a s  an assembly worker, and that Alex Peterson ("Peterson"), was a painter/powder coater on the assembly line at Soo Tractor.  The allegations of Paragraph 30 are otherwise denied.

31.     Upon information and belief, Mierau returned to work in or around February 2014 after missing some work due to a back injury.

**ANSWER**:    Defendant lacks knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 and on that basis denies the allegations.

32.     Upon information and belief, when Mierau returned to work, Mierau told Kunkel about Mierau's ongoing struggles with alcohol and substance abuse and other  intimate details about Mierau's personal life.

**ANSWER**:   Defendant admits that Mierau informed Kunkel about his struggles with alcohol and substance abuse during a formal review with Mierau and the Manager of Soo Tractor's Human Resources Department about Mireau's continuing work at Soo Tractor.   The other allegations contained in Paragraph 32 are denied.

33.     Upon information and belief, Kunkel took a special interest in Mierau's professional and personal life, and told Mierau he wanted to help Mierau succeed. Despite Mierau's lack of education and experience and substance abuse issues that impacted his job performance, Kunkel promoted Mierau to the position of Project Manager for Old Soo's

newly created Special Projects Team, which came with an increase in salary and significant increase in responsibility. In this new position, Mierau also began reporting directly to Kunkel.

**ANSWER**:   Defendant admits that he wanted to help Mierau succeed.  Defendant admits that Mierau moved to a new position with the consent, knowledge and agreement of the owner of Soo Tractor, Allen Mahaney, replacing at least two other positions with combined salaries well in excess of $100,000.00, resulting in considerable savings to Soo Tractor, and that Mierau consistently and successfully performed his duties within his new position.  Defendant denies that Mierau reported directly to Kunkel as a result of this promotion.  The other allegations contained in Paragraph 33 are denied.


34.     Upon information and belief, during this time, Mierau began to share more of his personal history with Kunkel, including Mierau's financial troubles and debt.

**ANSWER**:   The allegations of Paragraph 30 are denied.


35.     Upon information and belief, Kunkel gave Mierau approximately $3,000 for past owed day care expenses for Mierau's children, and an additional $900 to help pay off Mierau's car loan.

**ANSWER**:   Defendant admits, with respect to Paragraph 35, only that any funds paid to satisfy or repay any of Mireau's personal debts were paid only after a formal and specific request by Mierau to the Company and with the approval of Soo Tractor's owner, Allen Mahaney.  To the extent any such monies were paid with Defendant's personal funds, and not Soo Tractor's, such funds were paid with the promise from and expectation that Soo Tractor would reimburse

Defendant.  The allegations of Paragraph 35 are otherwise denied.

36.     Although Gavin/Solmonese did not know it at the time, upon information and belief, in or around June 2014, Kunkel began to make statements to Mierau that Mierau "needed his behind spanked" and needed to "have his ass spanked to become a man."

**ANSWER**:   The allegations of Paragraph 36 are denied.

37.     Upon information and belief, in or around June 2014, when Mierau and  Kunkel were working late and were the only two employees remaining at the Facility, Kunkel ordered Mierau to come with Kunkel to an office, ordered Mierau to take off  Mierau's belt, required Mierau to bend over one of the file cabinets and spanked Mierau on  the buttocks with his belt approximately 9-10 times. Upon information and belief, during  this incident, Kunkel made comments about how Mierau needed to gain control of his  finances and become a man.

**ANSWER**:   The allegations of Paragraph 37 are denied.

38.     Upon information and belief, after this incident, Kunkel continued to recommend and approve additional promotions and wage increases for Mierau,  representing that these promotions and raises were based on Mierau's work performance.

**ANSWER**:   The allegations of Paragraph 38 are denied.

39.     Upon information and belief, Kunkel also began having Mierau assist Kunkel

with taking care of Kunkel's personal and business expenses.

**ANSWER**:    Defendant admits that Mierau assisted with various administrative matters, including handling Soo Tractor business expenses that were incurred on Defendant's credit card. The allegations of Paragraph 39 are otherwise denied.

40.    Upon information and belief, after this first incident, Kunkel and Mierau had an argument over the phone. Upon information and belief, the next time Mierau and Kunkel worked late together, Kunkel told Mierau that Mierau was behaving like a child and would be punished for raising his voice to Kunkel.

**ANSWER**:    The allegations of Paragraph 40 are denied.

41.    Upon information and belief, Kunkel again brought Mierau into an office, ordered Mierau to drop his pants and boxers and bend over Kunkel's knee, and Kunkel proceeded to spank Mierau's naked bottom 8-10 times, causing welting.

**ANSWER**:    The allegations of Paragraph 41 are denied.

42.    Upon information and belief, after this second incident, Kunkel gave Mierau an additional $1,400 to pay for repairs to Mierau's personal vehicle, including new brakes and tires.

**ANSWER**:    Defendant admits, with respect to Paragraph 42, only that any funds paid to satisfy or repay any of Mireau's personal debts were paid only after a formal and specific request by Mierau to the Company and with the approval of Soo Tractor's owner, Allen Mahaney. To the extent any such monies were paid with Defendant's personal funds, and not Soo Tractor's, such

funds were paid with the promise and expectation that Soo Tractor would reimburse Defendant. The allegations of Paragraph 42 are otherwise denied.

43.     Upon information and belief, in or around September 2014, Kunkel told Mierau to come with Kunkel to lunch to receive another punishment, and brought Mierau to a local Hilton Garden Inn, where Kunkel was staying. Upon information and belief, Kunkel ordered Mierau to drop his pants and bend over Kunkel's knee and then Kunkel proceeded to spank Mierau approximately 10 times.

**ANSWER**:    The allegations of Paragraph 42 are denied.

44.     Upon information and belief, Kunkel recommended and approved another raise for Mierau after this third alleged spanking incident. In November 2014, Kunkel even suggested to Ted Gavin that Mierau should become a member of the Board of Directors of Old Soo.

**ANSWER**:    The allegations of Paragraph 44 are denied.

E.     **Mierau Reports Kunkel's Conduct to Gavin/Solmonese.**

45.     On or around Friday, December 19, 2014, Mierau's fiancé telephoned Waetzman and asked if he knew where Mierau was. Mierau's fiancé indicated that Mierau had a history of alcohol and drug problems, and she was concerned that she could not get in touch with Mierau.

**ANSWER**:     Defendant lacks knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 45 and on that basis denies the allegations.

46.     Waetzman contacted Kunkel to ask if Kunkel knew of Mierau's whereabouts, as Mierau was scheduled to work that day.

**ANSWER**:   Defendant lacks any recollection of any such call from Waetzman and on that basis denies the allegations contained in Paragraph 46.

47.     Kunkel indicated that Mierau was at the Sioux City Hilton Garden Inn (the "Hilton") and was being watched to make sure he was okay. Kunkel also provided Waetzman with the room number where Mierau was located at that time.

**ANSWER**:   Defendant denies that Mierau was being "watched" at the Hilton or that he or anyone was present with Mierau. Defendant lacks any recollection of any specific discussion with Waetzman about Mierau staying at the Hilton and on that basis denies the allegations contained in Paragraph 47.

48.     Upon information and belief, Kunkel had contacted Mierau when he did not show up for work, located where Mierau had been drinking, and arranged to have Mierau check into a room at the Hilton Garden Inn.

**ANSWER**:   Defendant denies that he contacted Mierau when he did not show up for work. Mierau contacted Kunkel after Mierau had failed to show for work for approximately 3 days. In response Kunkel and Donald McCormick assisted Mierau check into the Hilton, at Mierau's request. The remaining allegations contained in Paragraph 48, if any, are denied.

49.     Mierau alleges that while in that hotel room, Kunkel removed Mierau's clothes, and once he was naked, Kunkel had physical sexually-oriented contact with Mierau without Mierau's consent.

**ANSWER**:    The allegations of Paragraph 49 are denied.


50.     Upon information and belief, the following day, Saturday, December 20, 2014, Mierau called Waetzman's cell phone and was notably upset and crying. Upon information and belief, during this phone call, Mierau stated that he felt like he was a prisoner and reported that Kunkel had been sexually harassing Mierau. Specifically, Mierau told Waetzman that Kunkel had been abusing Mierau by inflicting spankings on multiple occasions as punishments.

**ANSWER**:     Defendant lacks knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 50 and on that basis denies the allegations.


51.     Upon information and belief, Mierau also reported to Waetzman that Kunkel had been providing financial assistance to Mierau and some other young male Old Soo employees, and made several references to Kunkel using this financial support to influence or take advantage of Mierau and the other young male employees.

**ANSWER**:     Defendant lacks knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 51 and on that basis denies the allegations.


52.     That same day, Waetzman contacted Gavin/Solmonese managing director and founding partner, Ted Gavin, to inform him of his conversation with Mierau and of

Mierau's accusations against Kunkel. This was the first time Gavin/Solmonese was aware of any issues or alleged wrongdoing of Kunkel.

**ANSWER**:    Defendant lacks knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 52 and on that basis denies the allegations.

53.    Later that evening, Mierau called and informed Waetzman that Mierau was back at home, and Waetzman suggested that Mierau speak with the Old Soo human resources department on Monday to discuss Mierau's allegations, and offered to accompany Mierau for this meeting.

**ANSWER**:    Defendant lacks knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 53 and on that basis denies the allegations.

54.    Even later that same evening, Kunkel called Waetzman and said that Waetzman was not allowed to take any further calls from Mierau's fiancé and that Kunkel would take all future calls from Mierau's fiancé. Kunkel also stated that it was doubtful that Mierau could continue to work for Old Soo.

**ANSWER**:  Defendant admits that he had a conversation with Waetzman. Defendant denies Plaintiff's characterization of the contents of the discussion with Waetzman.

55.    Once Waetzman informed Ted Gavin of these accusations, Gavin/Solmonese began an investigation and retained counsel to assist in that effort. Old Soo also had its outside counsel perform an investigation on behalf of Old Soo, including interviewing the Old Soo employees with potential information about Mierau's allegations.

**ANSWER**:    Defendant lacks knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 55 and on that basis denies the allegations.

**F.        Kunkel's Denials and Attempts to Conceal His Conduct.**

56.    When Gavin/Solmonese confronted Kunkel about Mierau's accusations, Kunkel repeatedly denied the allegations and denied any inappropriate conduct. Kunkel told Gavin/Solmonese's counsel that Mierau was an alcoholic and drug addict, and was completely fabricating the allegations against Kunkel.

**ANSWER**:    Defendant admits that he met with Craig Boggs who represented in sum and substance that he was acting in the interests of both Defendant and Gavin/Solmonese. Defendant admits that he denied Mierau's allegations. Defendant admits that he provided counsel with information about Mierau. The allegations of Paragraph 56 are otherwise denied.

57.    During the week of December 22, 2014, Gavin/Solmonese instructed Kunkel not to have any contact with Mierau until Gavin/Solmonese completed its investigation. Kunkel agreed not to contact Mierau for any reason unless and until instructed otherwise.

**ANSWER**:    Defendant admits that counsel initially advised him not to have contact with Mierau. Defendant denies that, after discussions with counsel, he agreed not to have contact with Mierau for any reason. The remaining allegations of Paragraph 57 are otherwise denied.

58.    Upon information and belief, in direct violation of Gavin/Solmonese's direction, Kunkel called Mierau on or around Saturday, December 27, 2014 to inquire

about Mierau's well-being. Upon information and belief, Kunkel told Mierau that Mierau could take as much time off work as he needed.

**ANSWER**:    Defendant admits that he had contact with Mierau regarding business issues after his discussion with counsel and admits that he likely would have inquired about Mierau's well-being.  The remaining allegations of Paragraph 58 are otherwise denied.


59.     Upon information and belief, Kunkel called Mierau again on or around December 31, 2014 and asked Mierau about what Mierau had reported about the incident  at the Hilton Garden Inn. Upon information and belief, Kunkel told Mierau that Mierau should not worry about the incident, should not speak with anyone about the incident, and  that if anyone were to call Mierau about the incident, Mierau should not make any  statements.

**ANSWER**:     Defendant denies that there was any "incident" at the Hilton Garden Hotel. Defendant admits in sum and substance that he discussed Mierau's allegations with Mierau as well as the handling of the allegations.  Defendant denies that he told Mierau not to make any statement.  The remaining allegations of Paragraph 59 are otherwise denied.


60.     Upon information and belief, Kunkel told Mierau that Kunkel wanted to get together with Mierau to discuss the situation and said that Mierau needed to have a cell phone so that Kunkel could get in touch with him.

**ANSWER**:    Defendant admits that Mierau needed a new cell phone for work.  The allegations of Paragraph 60 are otherwise denied.

20

61.     Upon information and belief, Kunkel also told Mierau that Kunkel could help take care of Mierau's hospital debts and medical expenses.

**ANSWER**:     The allegations of Paragraph 62 are denied.


62.     Upon information and belief, Kunkel also told Mierau that Mierau did not need to repay the money that Kunkel had previously loaned Mierau.

**ANSWER**:     The allegations of Paragraph 62 are denied.


63.     Upon information and belief, on or around January 2, 2015, Kunkel met Mierau at a Verizon Wireless store and purchased a new cellular phone for Mierau.

**ANSWER**:     Admitted that a business phone was purchased for Mierau on Soo Tractor's account.


64.     Upon information and belief, Kunkel also instructed Mierau not to tell anyone that Kunkel had loaned Mierau money, and if anyone were to ask Mierau about the loan, Mierau should respond that he did not know where the money came from.


**ANSWER**:     The allegations of Paragraph 64 are denied.


65.     Upon information and belief, when Mierau expressed concern that he did not have any remaining paid time off work, Kunkel responded that Mierau could take as much time off as he needed and that Mierau would continue be paid.

**ANSWER**:     Defendant admits only that he told Mierau that he had paid time off that could be

used consistent with the Company's practice and policy, and that other options such as short term disability were perhaps available. The allegations of Paragraph 65 are otherwise denied.

66.     Upon information and belief, Kunkel also told Mierau that an attorney from Old Soo's outside counsel was conducting an investigation into some allegations against Kunkel.

**ANSWER**: Admitted.

67.     Upon information and belief, Kunkel also instructed Mierau that if Mierau was contacted in connection with the investigation, Mierau should say that Kunkel did not do anything unprofessional. Upon information and belief, Kunkel also instructed Mierau to deny that Kunkel had been in touch with Mierau after the December 2014 Hilton incident.

**ANSWER**: With respect to the first sentence of Paragraph 67, Defendant admits only that he stated to Mierau that he had to be truthful and tell the lawyers that Defendant did not do anything unprofessional. The remaining allegations of Paragraph 67 are otherwise admitted.

68.     Upon information and belief, Kunkel told Mierau that Kunkel thought it was Waetzman who had made the allegations against Kunkel, and that Mierau should stay away from Waetzman and not speak to Waetzman about Kunkel.

**ANSWER**: Defendant denies that he told Mierau that it was Waetzman who made the allegations against Kunkel. The remaining allegations of Paragraph 68 are otherwise admitted.

69.     Upon information and belief, Kunkel also suggested that Mierau should sign a statement denying that Kunkel had engaged in any inappropriate conduct and recanting anything Mierau may have said about Kunkel's misconduct.

**ANSWER**:  The allegations of Paragraph 69 are admitted.


70.     Upon information and  belief, Kunkel contacted Mierau again on Monday, January 5, to confirm that Mierau would recant any accusations that Mierau had made against Kunkel if Mierau was contacted by Old Soo's outside counsel. Upon information and belief, Kunkel again told Mierau to take as much time off work as he needed to address  his health issues.

**ANSWER**:  Defendant does not recall the date or time of the call with Mierau, however, Defendant admits that he had a discussion with Mierau to confirm that Mierau would truthfully recant the lie that Mierau had told about the purported incident at the Hilton.  Defendant admits that within the constraints of Soo Tractor's policy, Mierau was told to take time off to address his health issues.


71.     Upon information and belief, Kunkel contacted Mierau again on Tuesday, January 6 and told Mierau that Kunkel told Old Soo's outside counsel that Mierau was receiving medical treatment, and that it was no longer necessary for Mierau to speak with  Old Soo's outside counsel about the accusations against Kunkel, and that the matter was  taken care of so Mierau did not have to worry about it anymore.

**ANSWER**:     The allegations contained in Paragraph 71 are denied.

72.     Gavin/Solmonese became aware that Kunkel had contacted Mierau, in direct violation of Gavin/Solmonese's directions not to do so. When asked about these incidents, Kunkel initially denied the extent and nature of his contacts with Mierau, and claimed he was only attempting to assist Mierau with some employee benefits issues related to Mierau's planned stay in a halfway house.

**ANSWER**:     Defendant lacks information sufficient to form a belief as to the truth of what Plaintiff alleges about its knowledge and on that basis denies the first sentence of Paragraph 72. Defendant denies Plaintiff's characterization of Defendant's conversations with counsel. Defendant admits only that counsel initially advised that he not to have contact with Mierau. Defendant denies that, after discussions with counsel, he agreed not to have contact with Mierau for any reason.   Defendant denies the remaining allegations of Paragraph 57 concerning Plaintiff's characterization of Defendant's discussions with his then counsel.

73.     Upon information and belief, Old Soo was conducting its own investigation into the allegations and planned to interview Mierau and other Old Soo employees, but did not want Gavin/Solmonese to speak with Mierau or any other Old Soo employees about the allegations against Kunkel in connection with Gavin/Solmonese's own investigation.

**ANSWER**:     Defendant lacks knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 73 and on that basis denies the allegations.

74.     Because it was clear that Kunkel had refused to follow Gavin/Solmonese's

directions and had been dishonest about the extent and nature of his late December/early January contacts with Mierau, Gavin/Solmonese chose to terminate its relationship with Kunkel and gave Kunkel the option to be terminated or to resign.

**ANSWER**:   Defendant admits that he was told by counsel that if he did not "resign" he would be fired by Plaintiff.  As to the remaining allegations in Paragraph 74, Defendant lacks knowledge sufficient to form a belief as to the truth of those allegations and on that basis denies the allegations.

75.     Kunkel resigned his employment on January 30, 2015.

**ANSWER**:   Defendant admits only that he resigned after being told that he would be fired if he did not resign.  The remaining allegations contained in Paragraph 75, if any, are denied.

G.     **Old Soo Terminates its Relationship With Gavin/Solmonese.**

76.     On or around January 28, 2015, as Old Soo apparently was finishing its investigation of the Kunkel matter, Old Soo notified Gavin/Solmonese that it was terminating its engagement with Gavin/Solmonese.

**ANSWER**:    Defendant admits that Old Soo notified Plaintiff that it was terminating the engagement.   As to the remaining allegations in Paragraph 76, Defendant lacks knowledge sufficient to form a belief as to the truth of those allegations and on that basis denies the allegations.

77.     Old Soo's outside counsel specifically told Gavin/Solmonese that Old Soo had

terminated the engagement because of Kunkel's conduct.

**ANSWER**:    Defendant lacks knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 77 and on that basis denies the allegations.

78.    After that time, Gavin/Solmonese did not provide services to Old Soo, and had no involvement in the business or decisions of Old Soo.

**ANSWER**:   Defendant admits that after Old Soo sold its business and/or assets it ceased to be a going concern and on that basis Defendant admits the allegations of Paragraph 78.

79.    Upon information and belief, the owners of Old Soo sold the assets of Old Soo to the new owner, Soo Tractor, LLC ("New Soo"). New Soo hired many of the former Old Soo employees, but either terminated or did not hire Mierau in March 2015.

**ANSWER**:   Defendant admits that Old Soo sold the business at or around the time, or shortly after, it terminated its contract with Gavin/Solmonese.  Defendant otherwise lacks knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 79 and on that basis denies the allegations.

80.    Although Gavin/Solmonese had sought and identified possible purchasers of Old Soo and was Old Soo's exclusive agent for the sale pursuant to its agreement with Old  Soo, Gavin/Solmonese did not receive the agreed upon anticipated under the Management Agreement due to Old Soo's decision to terminate its relationship with Gavin/Solmonese because of Kunkel's actions.

**ANSWER**:   The allegations contained in Paragraph 80 are denied.

**H.**   **Mierau Files Claims Against Gavin/Solmonese, Soo Tractor, and Kunkel.**

81.   On or around April 15, 2015, Mierau filed a charge of discrimination with the Iowa Civil Rights Commission against Old Soo, Gavin/Solmonese, and Kunkel, alleging sex discrimination, harassment, and retaliation under the Iowa Civil Rights Act and Title VII. Specifically, Mierau alleged that (i) Kunkel had sexually harassed him by forcing him to endure spankings on several occasions, and (ii) he was terminated on March 17, 2015 in retaliation for reporting Kunkel's conduct to Old Soo.

**ANSWER**:   Admitted.

**I.**   **Kunkel's Interactions with Old Soo Employee, Alex Peterson.**

82.   On or around March 20, 2015, another former young male Old Soo employee, Alex Peterson ("Peterson") filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") against Old Soo / New Soo and Gavin/Solmonese.

**ANSWER**:   Admitted.

83.   Upon information and belief, before Kunkel began at Old Soo, Peterson had worked for Old Soo as a powder coater. After Kunkel got to know Peterson, Kunkel promoted Peterson to the Special Projects Team with Mierau and a few other young male employees and increased Peterson's pay.   With this promotion, Peterson also began reporting directly to Kunkel. Upon information and belief, Peterson had no education, experience, or training for this position, and Peterson had been a consistently poor-performing employee for Old Soo with chronic absenteeism problems.

27

**ANSWER**:   Defendant admits that Peterson worked as a Powder Coater for Old Soo, and was asked to oversee one line at the Hawkeye Plant.  Defendant otherwise denies the allegations contained in Paragraph 83.

84.    Upon information and belief, in or around April 2014, Peterson missed a day  of work due to a tooth ache.

**ANSWER**:    Defendant lacks knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 84 and on that basis denies the allegations.

85.    Upon information and belief, when Peterson returned to work, Kunkel called Peterson into an office and said that because Peterson had missed work, Peterson had to choose between having money taken from Peterson's paycheck or being spanked. Upon information and belief, Kunkel then ordered Peterson into an office and locked the door, ordered Peterson to pull his pants and boxers down and bend over the desk, and then Kunkel proceeded to hit Peterson with a belt 20-30 times and then with Kunkel's hand several times on Peterson's naked bottom.

**ANSWER**:   The allegations contained in Paragraph 85 are denied.

86.    Upon information and belief, Kunkel threatened Peterson to keep this incident between the two of them if Peterson wanted to keep his job.

**ANSWER**:   The allegations contained in Paragraph 86 are denied.

87.     Upon information and belief, Peterson reported this incident to his supervisor at Old Soo, as well as to an Old Soo human resources employee, but they did not address his complaints.

**ANSWER**:     Defendant lacks knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 87 and on that basis denies the allegations.

88.     Upon information and belief, in or around May 2014, Kunkel again ordered Peterson into an office and asked if Peterson had told anyone about the first punishment. Upon information and belief, after Peterson denied telling anyone about the first punishment, Kunkel instructed Peterson to pull down his pants and Kunkel proceeded to again hit Peterson with a belt and Kunkel's bare hand.

**ANSWER**:     The allegations contained in Paragraph 88 are denied.

89.     Upon information and belief, Kunkel spanked Peterson with a belt again in or around July 2014.

**ANSWER**:     The allegations contained in Paragraph 89 are denied.

90.     Upon information and belief, also around July 2014, Kunkel also paid for Peterson's dental bills and for repairs to Peterson's personal vehicle. Upon information and belief, Kunkel told Peterson that Kunkel would use a Company program for these expenses, but Kunkel ultimately used Kunkel's personal credit card for these payments.

**ANSWER**:     Defendant admits, with respect to Request to Paragraph 90 only that any funds paid

to Peterson, or paid on Peterson's behalf were paid only after a formal and specific request by Peterson to the Company with the approval of Soo Tractor's owner, Allen Mahaney.  To the extent any such monies were paid with Defendant's personal funds, and not Soo Tractor's, such funds were paid with the promise and expectation that Soo Tractor would reimburse Defendant. The remaining allegations contained in Paragraph are otherwise denied.

91.     Upon information and belief, after Kunkel provided these payments to Peterson, in or around September 2014, Kunkel again spanked Peterson allegedly as punishment for Peterson arguing with his supervisor.

**ANSWER**:   The allegations contained in Paragraph 91 are denied.

92.     Upon information and belief, while Peterson was out of work for a funeral, Kunkel repeatedly sent Peterson text messages asking Peterson to "settle up."

**ANSWER**:   The allegations contained in Paragraph 92 are denied.

93.     Upon information and belief, in or around November 2014, Peterson drove Kunkel to another Old Soo facility and instructed Peterson to cut and sand a wooden paddle, ordered Peterson to pull down his pants, and used the paddle to spank Peterson's  buttocks numerous times.  Peterson videotaped this incident.

**ANSWER**:     Defendant admits that he had consensual, non-sexual physical contact with the unexposed buttocks of Peterson that was requested by Peterson that involved the use of a paddle that Peterson and Kunkel constructed, and that did not occur on company time.  Defendant denies that Peterson made a complete or accurate "videotape" of the interaction.  The remaining

allegations of Paragraph 93 are otherwise denied.

94.     Upon information and belief, in or around January 2015, while Gavin/Solmonese and Old Soo were investigating the allegations about Kunkel, Kunkel ordered Peterson to take time off work under the guise of taking care of child support and custody issues in order to avoid Peterson talking with anyone as part of the investigation.  Upon information and belief, while Peterson was on leave, Kunkel began calling Peterson  and coming to his house uninvited, all while telling Peterson he could not return to work.

**ANSWER**:    The allegations contained in Paragraph 94 are denied.

95.      In his EEOC charge, Peterson alleged that Gavin/Solmonese and Old Soo had allowed a sexually hostile work environment after Peterson reported Kunkel's alleged sexual harassment to Old Soo, and retaliated against Peterson by terminating his employment in or around March 2015.

**ANSWER**:    Admitted.

96.      Peterson did not claim that he contacted Gavin/Solmonese at any time to report Kunkel's behavior.

**ANSWER**:    To the extent the allegations contained in Paragraph 96 are referring to the EEOC allegations, the allegations are admitted.  To the extent the allegations in Paragraph 96 are referring to something other than the EEOC allegations, Defendant lacks knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 96 and on that basis

denies the allegations.

97.     Gavin/Solmonese was forced to retain legal counsel to defend against and resolve not only the charges filed by Peterson and Mierau, but also the other potential common law and statutory claims held by the employees, at significant expense to Gavin/Solmonese.

**ANSWER**:     Defendant lacks knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 87 and on that basis denies the allegations.


**J.**     **Gavin/Solmonese Discovers Kunkel's Additional Misconduct.**

98.     After Kunkel resigned from his employment, Gavin/Solmonese discovered that Kunkel had engaged in additional misconduct, separate and apart from his conduct towards Mierau and Peterson.

**ANSWER**:     The allegations contained in Paragraph 98 are denied.


99.     Gavin/Solmonese discovered that Kunkel had engaged in competitive activities during his employment with Gavin/Solmonese and had diverted potential business opportunities away from Gavin/Solmonese for Kunkel's personal gain.

**ANSWER**:     The allegations contained in Paragraph 99 are denied.


100.     Specifically, on or around March 31, 2014, Kunkel identified Tamarack Ski Resort ("Tamarack") as a potential client for Gavin/Solmonese.

**ANSWER**:     Defendant does not recall the precise date that he informed Gavin/Solmonese about

his involvement with "Tamarack" and the possibility of developing business for Gavin/Solmonese through his contact. Subject to this caveat, the allegations of Paragraph 100 are admitted.

101. Kunkel asked another Gavin/Solmonese employee to enter Tamarack's information into Gavin/Solmonese's Contact Relationship Management ("CRM") and lead-tracking system as a "pending" lead.

**ANSWER**: The allegations of Paragraph 101 are denied.

102. Kunkel reported numerous developments in securing Tamarack as a client but, several months later, ultimately reported the lead to be "dead." Gavin/Solmonese never performed any work for Tamarack.

**ANSWER**: Admitted.

103. After Kunkel's employment with Gavin/Solmonese ended, Gavin/Solmonese discovered that Kunkel had accepted an engagement with and performed services for Tamarack while Kunkel was still employed by Gavin/Solmonese.

**ANSWER**: The allegations contained in Paragraph 103 are denied.

104. Specifically, Gavin/Solmonese learned that during his employment, Kunkel had joined Tamarack's Board of Directors and had performed services for and on behalf of Tamarack that were the very same types of services Gavin/Solmonese performs for its

customers and clients.

**ANSWER**:   Defendant admits that he was a Member of the Board of Directors for New TR Holdings, LLC.  Defendant denies that he diverted any corporate opportunity concerning a related entity, "Tamarack", that might have been available to Gavin/Solmonese.   The remaining allegations contained in Paragraph 104 are otherwise denied.

105.   Kunkel never reported these business opportunities to Gavin/Solmonese  during his employment, and did not inform Gavin/Solmonese that Kunkel had accepted an  engagement on his own from Tamarack or that he joined Tamarack's Board of Directors or  performed any services for Tamarack at any time.

**ANSWER**:   The allegations contained in Paragraph 105 are denied

106.   Instead, Kunkel improperly accepted this business opportunity on his  own behalf, depriving Gavin/Solmonese of this business.

**ANSWER**:   The allegations contained in Paragraph 106 are denied.

107.   Upon information and belief, Kunkel had asked Mierau to assist Kunkel with Kunkel's investment in or involvement with Tamarack LLC.

**ANSWER**:   The allegations contained in Paragraph 107 are denied.

108.   Upon information and belief, Kunkel instructed Mierau not to tell anyone else  at Gavin/Solmonese or Old Soo about Kunkel's service on Tamarack's Board of Directors.

**ANSWER**:   The allegations contained in Paragraph 107 are denied.

109.    Upon information and belief, Kunkel received current or future benefits for the services Kunkel performed for Tamarack, all while Kunkel was still employed by Gavin/Solmonese.

**ANSWER**:    Kunkel admits that he was provided compensation for the services that he provided as a Member of the Board of New TR Holdings.   The remaining allegations contained in Paragraph 109 are otherwise denied.

.

110.    Kunkel also falsified his expense reports, by, among other things, submitting duplicate slips for the same expenses, causing him to receive multiple reimbursements for the same expense.

**ANSWER**:    The allegations contained in Paragraph 110 are denied.

111.    Upon information and belief, Kunkel also submitted false reimbursement requests, by, among other things, requesting reimbursement for non-business expenses and for meals in cities on a date that Kunkel could not have been in the stated city.

**ANSWER**:    The allegations contained in Paragraph 111 are denied.

112.    As a result of Kunkel's conduct, Gavin/Solmonese has suffered damages in lost fees and commissions from Old Soo, compensation paid to Kunkel when he was acting contrary to Gavin/Solmonese's interest, expense reimbursements improperly paid to Kunkel, attorneys' fees and costs associated with defending and resolving the claims by Mierau, Peterson and Old Soo, and other monetary damages yet to be determined.

**ANSWER**:    The allegations contained in Paragraph 112 purport to state legal conclusions to which no answer is required.  To the extent the allegations purport to state something other than legal conclusions they are denied.

113.    As a result of Kunkel's conduct, business and referral contacts of Gavin/Solmonese have learned of these events and it has tarnished the business reputation of Gavin/Solmonese and caused damages to Gavin/Solmonese's reputation and future business prospects.

**ANSWER**:    The allegations in Paragraph 113 purport to state legal conclusions to which no answer is required.  To the extent the allegations purport to state something other than legal conclusions they are denied.

114.    Specifically, in or around December 2014, (before Old Soo or Gavin/Solmonese were aware of Kunkel's conduct), Old Soo's outside counsel informed Gavin/Solmonese that she was aware of two separate companies unaffiliated with Old Soo that were in need of services Gavin/Solmonese provides.

**ANSWER**:    Defendant lacks knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 114 and on that basis denies the allegations.

115.    At that time, Old Soo's outside counsel informed Gavin/Solmonese that she planned to recommend that the two companies use Gavin/Solmonese for these services, and that she would provide the companies with Gavin/Solmonese's contact information to set up a meeting and discuss the potential business opportunities.

**ANSWER**:    Defendant lacks knowledge sufficient to form a belief as to the truth of the

allegations contained in Paragraph 115 and on that basis denies the allegations.

116.    However, after Gavin/Solmonese and Old Soo became aware of Kunkel's conduct, Old Soo's outside counsel informed Gavin/Solmonese that she could not follow through on the referrals, due to Kunkel's conduct.

**ANSWER**:    Defendant lacks knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 116 and on that basis denies the allegations.

117.    Since that time, Gavin/Solmonese has not been able to secure any additional consulting work with any Iowa companies, nor has it received any further referrals from Old Soo's outside counsel.

**ANSWER**:    Defendant lacks knowledge sufficient to form a belief as to the truth of the allegations contained in Paragraph 87 and on that basis denies the allegations.

118.    Upon information and belief, Gavin/Solmonese's difficulties in securing additional clients in Iowa is due to the fact that other companies heard about Kunkel's conduct while providing services for Old Soo and due to the damage caused to a long-time referral source for Gavin/Solmonese.

**ANSWER**:    The allegations contained in Paragraph 118 are denied.

119.    As a result of Kunkel's conduct, Gavin/Solmonese has suffered  monetary damages that exceed $1 million.

**ANSWER**:    The allegations contained in Paragraph 119 are denied.


## COUNT I
## BREACH OF FIDUCIARY DUTY

120.    Gavin/Solmonese repeats and realleges each and every allegation contained in Paragraphs 1 through 119 as if fully stated herein.

**ANSWER**:    The Answers to Paragraphs 1 through 119 are repeated as if fully stated herein.


121.    Kunkel was employed in a position of trust and responsibility for Gavin/Solmonese. In that capacity, Kunkel owed Gavin/Solmonese a fiduciary duty to treat Gavin/Solmonese with the utmost candor, care, loyalty, full disclosure, and good faith.

**ANSWER**:    Defendant denies that he had owed a fiduciary duty to Plaintiff. The remaining allegations in Paragraph 121 purport to state legal conclusions to which no answer is required.


122.    Kunkel's fiduciary duties included a duty of loyalty to act in Gavin/Solmonese's best interests at all times and not to engage in conduct that would be harmful or detrimental to Gavin/Solmonese. Kunkel accepted this position of trust and confidence.

**ANSWER**:    The allegations in Paragraph 122 purport to state legal conclusions to which no answer is required. To the extent the allegations purport to state something other than legal conclusions they are denied.


123.    While employed by Gavin/Solmonese, Kunkel breached his fiduciary duties and his obligation to act with the utmost candor, care, loyalty, full disclosure, and good faith by

engaging in inappropriate and improper conduct directed towards Old Soo's employees and by attempting to hide this conduct from Old Soo and Gavin/Solmonese.

**ANSWER**:    The allegations in Paragraph 123 purport to state legal conclusions to which no answer is required.  To the extent the allegations purport to state something other than legal conclusions they are denied.

124.    Specifically, Kunkel improperly used his position of trust and confidence with Gavin/Solmonese by recommending and approving promotions and wage increases for Mierau and Peterson for the purpose of inducing Mierau and Peterson not to report Kunkel's improper behavior that were unwarranted and otherwise would not have occurred. These actions were undertaken solely for Kunkel's personal benefit and were harmful and detrimental to Gavin/Solmonese.

**ANSWER**:    The allegations contained in Paragraph 124 are denied.

125.    Specifically, these actions induced Mierau and Peterson not to report Kunkel's improper behavior so that Kunkel could continue engaging in the same improper behavior in the future and to hide his improper behavior from his employer, Gavin/Solmonese, in violation of Kunkel's duty to act with the utmost candor, full disclosure, and good faith in his position of trust and confidence with Gavin/Solmonese.

**ANSWER**:    The allegations in Paragraph 125 purport to state legal conclusions to which no answer is required.  To the extent the allegations purport to state something other than legal conclusions they are denied.

126.    Kunkel's actions in recommending and approving these promotions and wage increases for the Old Soo employees violated Kunkel's duty to act in Gavin/Solmonese's best interest at all times and not to engage in conduct that would be harmful or detrimental to Gavin/Solmonese.

**ANSWER**:    The allegations in Paragraph 126 purport to state legal conclusions to which no answer is required.  To the extent the allegations purport to state something other than legal conclusions they are denied.

127.    While employed by Gavin/Solmonese, Kunkel further breached his fiduciary duty of loyalty and his obligation not to act in his own interest at the expense of Gavin/Solmonese's interests by usurping actual and/or potential corporate opportunities rightfully belonging to Gavin/Solmonese, without Gavin/Solmonese's knowledge or consent.

**ANSWER**:    The allegations in Paragraph 127 purport to state legal conclusions to which no answer is required.  To the extent the allegations purport to state something other than legal conclusions they are denied.

128.    Specifically, Kunkel breached his fiduciary duty of loyalty and his obligation not to act in his own interest at the expense of Gavin/Solmonese's interests by requiring Old Soo employees to assist Kunkel in improperly usurping and misappropriating corporate opportunities belonging to Gavin/Solmonese for Kunkel's personal financial gain.

**ANSWER**:    The allegations in Paragraph 128 purport to state legal conclusions to which no answer is required.  To the extent the allegations purport to state something other than legal conclusions they are denied.

129.    Kunkel's actions constituted self-dealing at the expense of Gavin/Solmonese, in breach of Kunkel's fiduciary duties to Gavin/Solmonese.

**ANSWER**:    The allegations in Paragraph 129 purport to state legal conclusions to which no answer is required.  To the extent the allegations purport to state something other than legal conclusions they are denied.


130.    Kunkel's actions as described above were outside the scope of any lawful business pursuits.

**ANSWER**:    The allegations in Paragraph 130 purport to state legal conclusions to which no answer is required.  To the extent the allegations purport to state something other than legal conclusions they are denied.


131.    Kunkel's breaches of his fiduciary duties deprived Gavin/Solmonese of the fair and full value of Kunkel's services while he was employed by Gavin/Solmonese.

**ANSWER**:    The allegations in Paragraph 131 purport to state legal conclusions to which no answer is required.  To the extent the allegations purport to state something other than legal conclusions they are denied.


132.    Kunkel knew or reasonably should have known that Kunkel's self-dealing actions of usurping corporate opportunities properly belonging to Gavin/Solmonese was harmful to Gavin/Solmonese.

**ANSWER**:    The allegations in Paragraph 132 purport to state legal conclusions to which no

answer is required.  To the extent the allegations purport to state something other than legal conclusions they are denied.

133.  Kunkel also knew or reasonably should have known that Kunkel's actions would cause Old Soo to terminate its agreement with Gavin/Solmonese and expose Gavin/Solmonese to claims and potential litigation by Old Soo and its employees.

**ANSWER**:  The allegations in Paragraph 133 purport to state legal conclusions to which no answer is required.  To the extent the allegations purport to state something other than legal conclusions they are denied.

134.  Kunkel also knew or should have known that his actions would be harmful to Gavin/Solmonese's reputation and would cause Gavin/Solmonese to suffer damages.

**ANSWER**:  The allegations in Paragraph 134 purport to state legal conclusions to which no answer is required.  To the extent the allegations purport to state something other than legal conclusions they are denied.

135.  As a direct, proximate, and foreseeable consequence of Kunkel's breaches of his fiduciary duties to Gavin/Solmonese, Kunkel caused Gavin/Solmonese to suffer economic damage in an amount to be determined at trial, including, but not limited to, lost profits, reimbursement of all sums paid to Kunkel during the period of his breach, and reimbursement of all costs incurred by Gavin/Solmonese in defending and resolving all future claims against Gavin/Solmonese held by Old Soo's former employees.

**ANSWER**:  The allegations in Paragraph 135 purport to state legal conclusions to which no

answer is required. To the extent the allegations purport to state something other than legal conclusions they are denied.

136. Kunkel's actions were intentional, malicious, and/or committed with reckless disregard for the rights and interests of Gavin/Solmonese.

**ANSWER**: The allegations in Paragraph 136 purport to state legal conclusions to which no answer is required. To the extent the allegations purport to state something other than legal conclusions they are denied.

137. Because of the willful and malicious nature of Kunkel's conduct, and his abuse of his position of trust, the imposition of punitive damages is warranted.

**ANSWER**: The allegations in Paragraph 137 purport to state legal conclusions to which no answer is required. To the extent the allegations purport to state something other than legal conclusions they are denied.

## COUNT II
## UNJUST ENRICHMENT

138. Gavin/Solmonese repeats and realleges each and every allegation contained in Paragraphs one through 1 through 137 as if fully stated herein.

**ANSWER**: The Answers to Paragraphs 1 through 137 are repeated as if fully stated herein.

139. Upon information and belief, Kunkel's conduct, as alleged above, including

his unfair competition with Gavin/Solmonese through his usurpation of corporate opportunities rightfully belonging to Gavin/Solmonese, conferred a benefit on Kunkel.

**ANSWER**:   The allegations in Paragraph 137 purport to state legal conclusions to which no answer is required.  To the extent the allegations purport to state something other than legal conclusions they are denied.

140.   Kunkel has unjustly retained the benefit of his improper conduct, and has been unjustly enriched in an amount to be determined at trial, and Gavin/Solmonese is entitled to disgorgement of any and all profits, earnings, and compensation attributable to Kunkel's wrongful actions.

**ANSWER**:   The allegations in Paragraph 137 purport to state legal conclusions to which no answer is required.  To the extent the allegations purport to state something other than legal conclusions they are denied.

141.   Kunkel's actions as described above were outside the scope of any lawful business pursuits.

**ANSWER**:   The allegations in Paragraph 137 purport to state legal conclusions to which no answer is required.  To the extent the allegations purport to state something other than legal conclusions they are denied.

142.   Kunkel's retention of such benefits violates the fundamental principles of

justice, equity, and good conscience.

**ANSWER**:    The allegations in Paragraph 137 purport to state legal conclusions to which no answer is required.  To the extent the allegations purport to state something other than legal conclusions they are denied.


143.    Kunkel's actions were intentional, malicious, and/or committed in reckless disregard for the rights and interests of Gavin/Solmonese.

**ANSWER**:    The allegations in Paragraph 137 purport to state legal conclusions to which no answer is required.  To the extent the allegations purport to state something other than legal conclusions they are denied.


144.    Because of the willful, malicious and/or reckless nature of Kunkel's conduct, and his abuse of his position of trust, the imposition of punitive damages is warranted.

**ANSWER**:    The allegations in Paragraph 137 purport to state legal conclusions to which no answer is required.  To the extent the allegations purport to state something other than legal conclusions they are denied.


### COUNT III

### TORTIOUS INTERFERENCE WITH CONTRACT

By Memorandum Opinion and Order dated July 6, 2016 (Dkt. # 35), the Court dismissed Count III, for Tortious Interference with Contract, with prejudice.  Consequently, no response to the allegations contained in Count III is required.

## COUNT IV

## TORTIOUS INTERFERENCE WITH
## PROSPECTIVE ECONOMIC ADVANTAGE

By Memorandum Opinion and Order dated July 6, 2016 (Dkt. # 35), the Court dismissed Count IV, for Tortious Interference with Prospective Economic Advantage, with prejudice. Consequently, no response to the allegations contained in Count IV is required.

## COUNT V
## FRAUD

By Memorandum Opinion and Order dated July 6, 2016 (Dkt. # 35), the Court dismissed Count V, for Fraud, as Plaintiff's complaint did not detail any actual fraudulent expense reports. Plaintiff was granted leave to amend the complaint, if possible, by July 28, 2016. Plaintiff failed to properly amend their complaint and, the fraud allegation is thus dismissed and moot and no response to the allegations contained in Count IV is required.

## AFFIRMATIVE DEFENSES

Defendant, Stephen L. Kunkel, by his attorneys, states as his Affirmative Defenses to Plaintiff's First Amended Complaint, as follows:

## FIRST AFFIRMATIVE DEFENSE
## (Unclean Hands)

1.    Plaintiff alleges that Defendant's behavior caused Soo Tractor to terminate the Management Agreement and it thereby lost a success fee and other compensation which it claims it would have earned under the Management Agreement for selling the assets of Soo Tractor.

2.    The provision of the Management Agreement which allowed a success fee,

however, had expired.

3.     Specifically, the Management Agreement, which was executed on or about October 21, 2013, a copy of which is attached to the Complaint (Dkt. # 19, Ex. A), provided that, [i]f requested by Client, Manager shall seek purchasers for all or part of Client's business . . . ." (Management Agreement, Section I(F)).  The Agreement further provided that if the Manager was asked to assist in a sales process then, "Manager shall be paid a Success Fee(s) in certified funds at the closing of each sale which occurs within one year from the execution of this Agreement, provided Manager performed and completed such documentation, solicitation and due diligence tasks routinely associated with a sale for each such transaction."  (Management Agreement, Section V.I (E)(2)).

4.     The Management Agreement further provides that it may not be amended or changed, "except in writing signed by each party . . . ." (Management Agreement Section XII.A).

5.     Ted Gavin, the owner of the Plaintiff company, claims that he sent a letter dated November 18, 2014 (the "Letter") to the owner of Soo Tractor, and to his counsel John Anderson, that extended the Management Agreement success fee provision.

6.     The letter was not sent by email even though Ted Gavin sent other letters to Soo Tractor and to John Anderson by email during the same time period.  The attorney for the owner, as well as other representatives of Allen Mahaney and Soo Tractor, deny that the Letter was ever received or that Mahaney wanted Gavin/Solmonese involved in the sale as purported in the letter fabricated by Ted Gavin.  Further, there is no letter or amendment that was ever signed by Al Mahaney or anyone acting on behalf of Soo Tractor allowing any amendment to the Management Agreement's provisions regarding Success Fee(s).

7.     The author of the letter, Ted Gavin, admits to the destruction of the metadata for

the Letter. Ted Gavin specifically claims that he erased all electronic data related to the Letter after the termination of Gavin/Solmonese. Ted Gavin in fact erased all the metadata relating to the Letter after he learned about the EEOC claims were brought against Soo Tractor, Gavin/Solmonese and Kunkel, even though other company documentation in the same time period was preserved.

8.     Plaintiff fabricated the Letter after Plaintiff was terminated by Soo Tractor and did not mail the Letter to Soo Tractor or show it to Allen Mahaney as it claims.

9.     Plaintiff seeks damages for the loss of a success fee based on a fabricated Letter Agreement, in full knowledge that Plaintiff had no rights to any success fee for the sale of Soo Tractor after Plaintiff's contract with Soo Tractor was terminated, and therefore has not acted fairly, equitably and honestly. Plaintiff has acted fraudulently and in bad faith in the issue in controversy and therefore has unclean hands foreclosing its right to any remedy for purported damages arising from the termination of the Management Agreement.

### SECOND AFFIRMATIVE DEFENSE
### (Lack of Standing)

10.     Plaintiff contends that Defendant breached a duty of loyalty to it by allegedly (a) causing employees of Soo Tractor to conduct work for Defendant's personal business interests on Soo Tractor payroll; (b) by improperly giving raises to Soo Tractor employees; and (c) by allegedly sexually harassing employees of Soo Tractor.

11.     Plaintiff admits it did not employ such employees or pay such employees that were purportedly given improper raises or that purportedly claimed to have been sexually harassed. Plaintiff did not in fact employ any of the individuals that Plaintiff claims were given improper raises, used to conduct work for Defendant's personal business interests, or that were purportedly sexually harassed by Defendant.

12.     Plaintiff lacks standing to pursue the breach of duty of loyalty claims for such alleged behavior because it did not employ such employees and did not pay them any compensation, and thus, any purported injury would have only harmed Soo Tractor and not Plaintiff.

13.     Plaintiff does not, therefore, have any right to assert any such breach of duty of loyalty claims with regards to any improper promotions or treatment of any Soo Tractor employees.

**THIRD AFFIRMATIVE DEFENSE**
**(Failure to Mitigate)**

14.     Plaintiff had a duty to mitigate the damages it alleges were caused by Defendant.

15.     Plaintiff contends that it was entitled to a success fee for the sale of the assets of Soo Tractor under the Management Agreement but did not receive it because of the actions of Defendant.

16.     Plaintiff did not demand from, or file suit against, Soo Tractor to try and obtain payment of the funds it claims it is owed.

17.     It has thereby failed to undertake reasonable steps to avoid the losses from Defendant's alleged unlawful actions; and therefore, Plaintiff should not be able to claim such damages.

18.     Plaintiff executed a release of claims.  Some or all of Plaintiff's claims are barred by the doctrine of release and specifically by the releases that Gavin/Solmonese gave to Soo Tractor Sweeprake, LLC after a mediation, resolution and settlement of all of the sexual harassment claims that were alleged by the two Soo Tractor employees.

19.     Plaintiff specifically released all claims against Soo Tractor "relating to claims Peterson made or could have made against [Soo Tractor] in connection with the [claims made by

49

Peterson and Mierau]."

20.     Plaintiff claims that Soo Tractor terminated the Management Agreement because of allegations raised by Peterson and Mierau.  Plaintiff released Soo Tractor from its termination of the Management Agreement and therefore cannot now claim any damages arising from such termination

**WHEREFORE**, Defendant Stephen L. Kunkel requests that this Court,

A.  Dismiss Plaintiffs' Complaint with prejudice, or, alternatively, enter Judgment in favor of Defendant and against Plaintiffs; and
B.  Award Defendant any other and further relief that this Court deems just and equitable.

Dated: February 7, 2018                               STEPHEN L. KUNKEL


By: /s/ Stephen L. Kunkel
    Stephen L. Kunkel


THE GURLAND LAW FIRM


By:  /s/ Michael Z. Gurland
     Michael Z. Gurland
     The Gurland Law Firm
     414 North Clay Street,
     Hinsdale, Illinois 60521
     mzg@gurlandlawfirm.com
     (312) 420-8812
     ARDC # 6274400

     and

     Christopher R. Hedican
     Baird Holm Law Firm
     1700 Farnam Street, Suite 1500
     Omaha, Nebraska 68102

     *Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2018, I caused the foregoing First Amended Answer to be served via U.S. Mail and/or electronic mail, to the below-named attorney(s) who are registered to received electronic filings, by operation of the Clerk of the U.S. District Court's Electronic Case Filing (ECF) system:

To:    Craig T. Boggs                                Brian L. Shaw
Veronica Couzo                            Shaw Fishman Glantz & Towbin LLC
Perkins Coie LLP                         321 North Clark Street, Suite 800
131 South Dearborn Street, Suite 1700   Chicago, Illinois 60654
Chicago Illinois 60654                 bshaw@shawfishman.com
cboggs@perkinscoie.com
vcouzo@perkinscoie.com

/s/ Michael Z. Gurland

Michael Z. Gurland
The Gurland Law Firm
414 North Clay Street,
Hinsdale, IL 60521
(312) 420-8812
mzg@gurlandlawfirm.com
ARDC # 6274400