# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| GAVIN/SOLMONESE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16-CV-1086 |
| v. | ) | |
| | ) | Judge Martha Pacold |
| STEPHEN L. KUNKEL, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION IN LIMINE**

## I.     INTRODUCTION

Defendant Stephen Kunkel ("Kunkel") submits this Brief in support of his Motion in Limine pursuant to Fed. R. Evid. 401, 402, 403, 404, 408, & 801 and Fed. R. Civ. P. 26 to exclude evidence and improper argument it anticipates Plaintiff Gavin/Solmonese, LLC ("G/S") will offer at trial. For the reasons and authority cited below, the Court should decline to admit or otherwise strictly prohibit any evidence, argument, or comment on the subjects set forth below.

## II.     LEGAL ANALYSIS

**A.     The Court Should Preclude G/S From Presenting Arguments to the Jury Regarding Equitable Relief.**

The Court should preclude G/S from making any arguments to the jury regarding equitable relief, as the Court, rather than the jury, must decide G/S's claims for equitable relief to the extent such claims are ultimately allowed by the Court.

Equitable remedies are issues to be decided by the Court and not presented to the jury. *See Lewis v. School Dist. No. 70*, 2009 WL 928874, at *3 (S.D. Ill. April 6, 2009) (determining that front pay is an equitable remedy not to be presented to the jury and excluding evidence of front pay); *Edwards v. Ill. Dep't of Fin. & Professional Reg.*, No. 12 C 00371, 2017 WL 2224878, at *2 (N.D. Ill. May 22, 2017) (granting "Defendant's motion in limine to exclude any evidence of

1

equitable remedies at trial"). In *Tomao v. Abbott Laboratories, Inc.*, the court found the equitable issues of front pay, back pay, and reinstatement were to be decided by the judge rather than the jury and excluded evidence of these claims in limine. *Tomao v. Abbott Labs., Inc.*, No. 04 C 3470, 2007 WL 141909, at *2 (N.D. Ill. Jan. 16, 2007) (citing *Kaplan v. City of Chicago,* No. 99 C 1758, 2005 WL 1026574, at *4 (N.D. Ill. Apr.22, 2005)). Likewise, in *Gonzalez v. Ford Motor Co.*, 1:12-cv-00535, 2014 WL 6895787, at *5 (S.D. Ind. Dec. 5, 2014), the court granted a motion in limine to exclude evidence of plaintiff's back pay, front pay, and reinstatement from the jury.

Similarly, the remedy for a breach of duty of loyalty, including the possibility of salary forfeiture is "within the equitable discretion of the court." *Bank of Tokyo-Mitsubishi, Ltd. v. Malhotra*, 131 F. Supp.2d 959, 961 (N.D. Ill. 2000) (quoting *In re Marriage of Pagano*, 154 Ill.2d 174, 190 (Ill. 1992)); *U.S. v. Cancer Treatment Centers of America*, 2005 WL 300414, *1 (N.D. Ill. Feb. 4, 2005). "When one breaches a fiduciary duty to a principal the appropriate remedy is within the equitable discretion of the court." *ICD Publications, Inc. v. Gittlitz*, 2014 IL App (1st) 133277, 24 N.E. 3d 898, 913 (2014). The Court should therefore prohibit G/S from presenting evidence of front pay and breach of a duty of loyalty.

**B.    The Court Should Exclude Any Evidence Regarding the Amount of the Settlement of Claims Brought by Mierau or Peterson.**

The Court should exclude any evidence regarding the amount of the settlement payments made to McMichael Mierau ("Mierau") or Alexander Peterson ("Peterson") as (a) Gavin/Salmonese released claims for recovery of such sums, and (b) it would be more prejudicial than probative and is irrelevant. Fed. R. Evid. 401-02. In addition, "[e]vidence of settlements or compromises is not admissible to prove the validity of a disputed claim." Fed. R. Evid. 408(a); *Federal Deposit Insurance Corporation v. Chicago Title Insurance Company*, No. 12-cv-05198, 2017 WL 3592736, at *7 (N.D. Ill. Aug. 21, 2017) (granting a motion in limine to exclude evidence of settlement discussions and finding settlement correspondence inadmissible to prove or disprove

2

the validity of a disputed claim); *Dubin v. Bd. of Madison Area Technical Coll. Dist.*, 10-cv-35, 2011 WL 13209602, at *2 (W.D. Wis. Apr. 26, 2011) (excluding "[e]vidence about the terms of the [prior] settlement agreement," since this evidence would be "irrelevant or substantially prejudicial"); *Trustees of Chicago Plastering Institute Pension Trust v. J.P. Phillips, Inc.*, No. 03 C 2318, 2004 WL 3249861, at *1 (N.D. Ill. Sept. 3, 2004) ("Generally, any past settlements and settlement negotiations will not be relevant to this case.").

C. **The Court Should Exclude Any Evidence Regarding Photographs or Videos Related to Alexander Peterson.**

The Court should also exclude the photographs or videos related to Alexander Peterson (collectively referred to as "Peterson Videos") and any other related evidence, including testimony concerning the same. Fed. R. Evid. 402-403. On March 20, 2015, approximately two months after Soo Tractor terminated the contract with G/S, Alexander Peterson filed an EEOC matter against Kunkel, G/S and Soo Tractor. Peterson's EEOC counsel then informed the parties that Peterson had secretly recorded Kunkel spanking Peterson in November 2014. The parties were unaware of the Peterson Videos prior to this disclosure, and Peterson never shared the Videos with anyone at Soo Tractor prior to Al Mahaney's decision to terminate the G/S Management Contract. (Dkt. # 99 ¶ 32).

First, the Peterson Videos are irrelevant because it is undisputed that Soo Tractor did not know about them when it terminated the Management Agreement with G/S and therefore it could not have been a factor in Soo Tractor's decision-making. (*Id,* Ex. R, Peterson Tr. At 107-117; Ex. GG, Peterson March Tr. at 49-50). It is well established in the Seventh Circuit that evidence which was not known to a decision maker when the challenged decision is made should be excluded during trial. *Stimeling v. Board of Educ. Peoria Public Sch. Dist.*, 2010 WL 4922880, at *1, 3 (C.D. Ill. 2010) (refusing to allow defendant to present at trial "information that was not known to [decision makers] at the time of the employment decisions . . . .").

Courts in the Seventh Circuit have repeatedly held that "the frame of reference for determining . . . the legitimacy of [defendants'] reasons for termination is based on the information and circumstances known to them at the time the decision was made and that information . . . that was not obtained until later, has no probative value on the issue of liability." *Id.* at *5; *see also Schuster v. Shepard Chevrolet, Inc.*, No. 99 C 8326, 2002 WL 507130 (N.D. Ill. 2002) (explaining in ruling on motions in limine that decision makers could not have relied upon information that had not been brought to their attention and thus evidence must be limited to information known at the time of the decision); *Cervantes v. Aragh Grp.,* 914 F.3d 560, 566-67 (7th Cir. 2019) (no causal connection in retaliation case where supervisor was unaware of complaints); *Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007) ("The fact that an officer later discovers additional evidence unknown to her at the time of the arrest, even if it tends to negate probable cause, is irrelevant— we only care about what the officer knew at the time the decision was made.").

Based on this precedent, the Peterson Videos must also be excluded at trial as irrelevant. G/S cannot argue that the Peterson Videos were a basis for Soo Tractor's termination of the Management Agreement as it is undisputed that Soo Tractor did not know of, and thus could not have relied on, the Peterson Videos when it decided to terminate G/S. *See* Fed. R. Civ. P. 402; *Gethers v. McDonald*, 2017 WL 1628403, at *2 (D. Conn. May 1, 2017) (granting motion in limine "to exclude evidence unknown to the hiring decision-makers at the time of their decision," as such evidence is "irrelevant").

Moreover, any purported value for playing the Peterson Videos would be substantially outweighed by unfair prejudice. "Photographs should be excluded where they would confuse or mislead rather than aid the jury. Photographs that are merely calculated to arouse the sympathy, prejudice, or passion of the jury and do not serve to illustrate disputed issues or aid the jury in its understanding of the case should not be admitted as evidence." 32A C.J.S. *Evidence* § 1245. G/S

4

seeks to offer the Peterson Videos only to distract the jury from the real issue in the case – why Soo Tractor terminated the Contract – and to arouse passion and prejudice in the jury. It is undisputed that Al Mahaney (Soo Tractor's decision maker) never saw the Peterson Videos, and thus could not have acted upon them. Nor can it be reasonably disputed that playing a videotape of Kunkel spanking Peterson would inflame the jury and result in a verdict based on bias, not facts.

In an analogous case, this Court excluded evidence of the plaintiff's arrest for theft, even though the decision maker knew of the arrest when it terminated the plaintiff's employment, because the defendant admitted that it did not use the arrest as a basis for the dismissal. *Plair v. E.J.Brach & Sons, Inc.*, 864 F. Supp. 67, 71 (N.D. Ill. 1994). Thus, "[i]f the jury were informed that [the plaintiff] was arrested on the night before he was fired, it may unfairly conclude that [the plaintiff] deserved to be fired because of his arrest." *Id.*

This case is even more compelling, as unlike the decision maker in *Plair*, Soo Tractor did <u>not</u> know about the evidence at issue. Therefore, as in *Plair*, if the jury were allowed to see the Peterson Videos, it may unfairly conclude that Kunkel deserves to be punished for the termination of the Management Agreement solely because of the unflattering nature of the videos – not because they have any probative value. For example, the Nevada Supreme Court affirmed exclusion of photos of weapons in the possession of the victim though the defendant alleged self-defense. *Scott v. State*, 422 P.3d 1229, *4 (Nev. 2018). "Even if the weapons may be probative of [the victim's] character, the fact that [the defendant] was unaware of the weapons renders the photos inadmissible because their probative value [was] substantially outweighed by the danger of unfair prejudice [or] confusion of the issues." *Id.* Accordingly, the Court should exclude evidence of the Peterson Videos as irrelevant and unfairly prejudicial. Fed. R. Evid. 402-403; *United States v. Holloway*, 402 Fed. Appx. 692, 695-96 (3d Cir. 2010) (affirming district court's exclusion of video evidence where "the video's potential to mislead and confuse the jury by causing it to speculate about other

issues" outweighed its probative value); *United States v. Cejas*, 761 F.3d 717, 726 (7th Cir. 2014) ("Evidence is unfairly prejudicial if it induces the jury to decide the case on an improper basis rather than on the evidence presented.").

For the same reasons, the Court should preclude G/S from offering evidence or argument regarding the photos that Peterson produced in the mediation, which allegedly show handprints on his exposed rear-end after an encounter with Mr. Kunkel. Peterson contends that he only once reported, to the Human Resources Director of Soo Tractor Amanda Sturenberg, and to his supervisor Jerami Stratmeyer, that Kunkel had spanked him, but that they did not believe him and did nothing about it. (Dkt. # 99 ¶ 31, Ex. R Peterson Tr. at 58-65). Peterson did not provide any photos to Soo Tractor. It is uncontroverted that Al Mahaney never saw any such photos; and, as such, the photos, even if they were truthfully taken after Peterson allowed himself to be spanked by Mr. Kunkel, are irrelevant and prejudicial.

**D.     The Court Should Exclude Any Evidence Regarding Alleged Action of Kunkel Not Known to Soo Tractor.**

The Court should also preclude any other evidence or argument of alleged inappropriate behavior by Kunkel with Peterson and Mireau or any other employee or person which was not known to Soo Tractor (Al Mahaney) prior to terminating the Management Agreement. Al Mahaney was the sole stockholder and alone made the decision to terminate the G/S contract.

It is undisputed that Mierau did not complain to anyone at Soo Tractor prior to the termination of G/S. (Dkt. # 99 ¶ 30). Likewise, it is undisputed that G/S never conveyed Mierau's allegations to Soo Tractor until after Soo Tractor had decided to terminate G/S. (Dkt. # 99 ¶¶ 41-52). Consequently, the Mierau allegations are irrelevant to Al Mahaney's decision to terminate G/S. Similarly, any other information or evidence not known to Al Mahaney at the point of termination should be excluded as irrelevant.

6

### E. The Court Should Exclude Speculative Testimony of Goosmann, Waetzman or Other Witnesses About Why Soo Tractor Terminated G/S.

Jenna Goosmann, Soo Tractor's outside counsel, who was uninvolved in the decision to terminate G/S, testified that she told her friend, Ted Gavin, that she believed Soo Tractor terminated G/S because of Kunkel but **admitted she was speculating and did not know that first hand**. (Dkt. # 99 ¶ 54, Ex. Z at 72-83 and 104). The Court should exclude any such speculation as irrelevant. *See, e.g.*, *Yang v. Air China Ltd.*, 2017 WL 4283953, at *7 (N.D. Ill. Sept. 27, 2017) (excluding witness's testimony "that appears to be based on pure speculation"); *Hughes v. Indianapolis Radio License Co.*, 2009 WL 226209, at *6 (S.D. Ind. Jan. 30, 2009) (excluding testimony about how third parties would have behaved under different circumstances, "because that would be pure speculation"); *see also Nuzzi v. Bourbonnais Elementary Sch. Dist.*, 07-CV-2127, 2008 WL 5273669, at *4 (C.D. Ill. Dec. 17, 2008) ("[D]isregard[ing] statements in the affidavits . . . not based on personal knowledge, or which require speculation regarding the motivation of persons other than the affiant.").

Moreover, this testimony, in which Goosmann will recount her own past statements to Ted Gavin, constitutes hearsay. Hearsay encompasses "out-of-court statements offered in evidence to prove the truth of the matter asserted." *United States v. Tolliver*, 454 F.3d 660, 666 (7th Cir. 2006) (quoting Fed. R. Evid. 801); *see also* Daniel J. Capra, *Prior Statements of Testifying Witnesses: Drafting Choices to Eliminate or Loosen the Structures of Hearsay Rule*, 84 FORDHAM L. REV. 1429, 1431 (2016) (noting that a declarant's recounting of own prior statements constitutes hearsay). Hearsay statements such as the ones plaintiff wishes to offer here are "generally inadmissible." *Lovelance v. McKenna*, 894 F.3d 845, 849 (7th Cir. 2018). No hearsay exception applies to the proposed testimony at issue here, *see* Fed. R. Evid. 801, and there is no reason to allow the plaintiff to introduce it at trial.

Similarly, at his deposition, Ross Waetzman testified that he had a conversation with Mike

7

Felts. In this conversation, Mike Felts allegedly told him that Al Mahaney terminated G/S because "he had a lot of concerns and reservations about Steve." This testimony is inadmissible hearsay, and should not be allowed at trial.

F.  **The Court Should Exclude Any Evidence Requiring Expert Testimony, Including Damages and Liability, as G/S Failed to Disclose Any Experts.**

The Court should preclude G/S from allowing any witness to testify as an expert because G/S did not disclose any expert witnesses or provide the required expert report. "[A]ll witnesses who are to give expert testimony under the Federal Rules of Evidence must be disclosed under Rule 26(a)(2)(A) . . . ." *Musser v. Gentiva Health Services*, 356 F.3d 751, 756 (7th Cir. 2004). In *Musser*, the Seventh Circuit held that it was not enough to simply disclose the identity and records of all of the witnesses without designating as experts those that would testify as expert witnesses. *Id*. at 757. "Formal disclosure of experts is not pointless." *Id*. at 757. A party "should not be made to assume that each witness disclosed [ ] could be an expert witness at trial." *Id.* "Knowing the identity of the opponent's expert witnesses allows a party to properly prepare for trial." *Id*. Failing to disclose an expert witness is prejudicial because

> there are countermeasures that could have been taken that are not applicable to fact witnesses, such as attempting to disqualify the expert testimony on grounds set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), retaining rebuttal experts, and holding additional depositions to retrieve the information not available because of the absence of a report.

*Id*. at 757-58. "The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was justified or harmless." *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996).

While a treating physician may be designated as an expert without the report required by Fed. R. Civ. P. 26(a)(2)(B), other experts retained to provide testimony in a case requires the proponent to disclose the name of the expert and provide "a written report that contains, among other things, a 'complete statement of all opinions the witness will express and the basis and

8

reasons for them.' The sanction for failure to comply with this rule is the 'automatic and mandatory' exclusion from trial of the omitted evidence unless non-disclosure was justified or harmless." *Happel v. Walmart Stores, Inc.,* 602 F.3d 820, 825 (7th Cir. 2010) (quotation omitted); *Nolan v. United States*, No. 12 C 0247, 2015 WL 5159888, at *6 (N.D. Ill. Sept. 1, 2015) (excluding expert testimony because, "[w]ith less than two weeks until trial, the prejudice against Defendant in failing to disclose these opinions and their bases is insurmountable"); *Amari Co., Inc. v. Burgess*, No. 07 C 01425, 2012 WL 5389787, at *2-5 (N.D. Ill. Nov. 2, 2012) (excluding plaintiff's experts who were not properly disclosed pursuant to Rule 26(a)(2)); *Karahodzic v. JBS Carriers, Inc.*, No. 12-cv-1040, 2015 WL 11181973, at *11 (S.D. Ill. Apr. 27, 2015) (limiting expert testimony to "the parameters of the opinions expressed in [the] expert report" in light of unjustified failure to disclose expert testimony through Rule 26 report).

Here, the time for disclosure of expert witnesses has long since passed. Admission of nondisclosed expert testimony would be unfairly prejudicial and the Court should preclude G/S from offering expert testimony on any issue as G/S failed to disclose any expert witnesses or provide the required expert report.

**G.     The Court Should Exclude any Evidence of Attorney Fees Incurred by G/S as G/S Failed to Disclose an Expert to Testify Regarding Attorney Fees.**

G/S should be prohibited from introducing any evidence of attorney fees as alleged damages because in the absence of expert testimony to establish what is fair and reasonable, evidence of attorney fees is irrelevant, and its probative value is substantially outweighed by unfair prejudice, confusion of the issues, and misleading of the jury. Fed. R. Evid. 401-403.

G/S seeks attorney fees incurred in defending another lawsuit allegedly caused by Kunkel's actions. However, the attorney fees that G/S seeks are "measured by the reasonable expenses of such litigation, including attorney fees." *Ohio Nat. Life Assur. Corp. v. Davis*, 803 F.3d 904, 910 (7th Cir. 2015) (quoting *Ritter v. Ritter,* 381 Ill. 549, 46 N.E.2d 41, 44 (1943)) (other citations

9

omitted). Consequently, G/S has "the burden of presenting sufficient evidence from which the trial court can render a decision as to their reasonableness." *LaHood v. Couri*, 236 Ill.App.3d 641, 649 (1992) (citing *Fiorito v. Jones*, 72 Ill.2d 73 (1978); *Heckmann v. Hospital Service Corp.*, 104 Ill.App.3d 728 (1982); *Ealy v. Peddy*, 138 Ill.App.3d 397 (1985)). Determining the value of legal services is "beyond the competence of people who are not legal professionals." *Russell G. Winick & Associates, P.C. v. Arjmand*, 2015 IL App (2d) 140620-U (Nov. 30, 2015) (quoting *Timothy Whelan Law Associates, Ltd. v. Kruppe*, 409 Ill. App.3d 359, 371 (2011)). Therefore, whether attorney fees are reasonable is "the subject of expert rather than lay testimony" as the "value of legal services is a subject that requires [specialized] knowledge." *Timothy Whelan Law Associates, Ltd. v. Kruppe*, 409 Ill. App.3d 359, 367 (2011) (citing *Todd W. Musburger, Ltd. v. Meier*, 394 Ill.App.3d 781, 800 (2009); *In re Marriage of Salata*, 221 Ill. App. 3d 336, 338-39 (1991)).

G/S did not disclose any expert witnesses or provide the expert report or other information and material required of experts by Rule 26. Absent such a witness, the Court should prohibit G/S from offering any evidence or argument concerning the attorney fees and costs it incurred as such is not relevant and would be unfairly prejudicial, irrelevant, and lack foundation.[1]

**H.     The Court Should Exclude Evidence of Business Opportunities G/S Claims it Lost.**

The Court should exclude any evidence of damages regarding G/S's alleged lost business opportunities as it is irrelevant, speculative, lacks foundation, and would be unfairly prejudicial. G/S has not disclosed any expert witnesses or provided any expert report to support such a claim regarding alleged lost business opportunities. In addition, G/S's fact witnesses, Ross Waetzman ("Waetzman") and Goosmann only offered speculation and hearsay testimony regarding unidentified business opportunities. Goosmann specifically declined to identify the two

---

[1] Notably, G/S did not even disclose damages of attorney fees until after discovery closed and until after expert reports were due and it did not provide any such expert reports regarding damages of attorney fees.

companies she claimed she planned to refer to G/S. She also admitted that she would have given such customers several options, G/S would have had to compete for the business, and the prospective customer would have to select G/S from its options. Goosmann also admitted she was not familiar with the details of the engagement and offered no specifics regarding lost revenue, let alone lost profits. Notably, Goosmann even admitted she did not know the identity of customers to which she had referred other workout companies that she might have referred G/S. (Dkt. #99, Ex. Z at 26-35).

"In calculating lost future profits or lost business, the measure of damages is guided by analysis of 'comparable businesses *in the area*.'" *Loeffel Steel Products, Inc. v. Delta Brands, Inc.*, 387 F.Supp.2d 794, 812 (N.D. Ill. 2005) (quoting *Cates v. Morgan Portable Bldg. Corp.*, 591 F.2d 17, 21 n. 7 (7th Cir. 1979)). "The business used as a standard must be as nearly identical to the plaintiff's as possible." *Loeffel Steel*, 387 F.Supp.2d at 812 (quoting *Lehrman v. Gulf Oil*, 500 F.2d 659, 667 (5th Cir. 1974)). Moreover, "[a]bsent the requisite showing of comparability, a damage model that predicts either the presence or absence of future profits is impermissibly speculative and conjectural." *Loeffel Steel*, 387 F.Supp.2d at 812. Goosmann provides no basis for her opinion, no comparable business, and G/S provides no other evidence of calculating alleged lost opportunity.

As the Court stated in *Loeffel Steel*, evidence of lost opportunity, such as Goosmann's testimony, should not be admitted based on the witness's unproven assertion. "It cannot be too often repeated or too strongly emphasized that 'nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Loeffel Steel*, 387 F.Supp.2d at 815. "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Loeffel Steel*, 387 F.Supp.2d at 817 (quoting *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 157

11

(1999)). The same applies to fact witnesses.

For example, in *Hallmark Ins. Administrators, Inc. v. Colonial Penn Life Ins. Co.*, No. 87 C 1770, 1989 WL 68477 (N.D. Ill. 1989), the Court granted summary judgment on plaintiffs' lost opportunity damages. The Court reasoned that the plaintiff only showed that there were preliminary negotiations for a business relationship and no actual agreement. *Id.* at *5. Moreover, there was no evidence "suggesting how damages could be calculated with any reasonable certainty from that prospective relationship." *Id.* Likewise, in *Hughes*, the court excluded plaintiff's testimony that, but for defendant's misconduct, plaintiff's sales pitches to certain third parties would have been successful. 2009 WL 226209, at *6. The court reasoned that this testimony of lost business opportunities "would be pure speculation," and therefore excluded it from trial. *Id.*

Here, G/S does not even have evidence of negotiations for a business relationship, the identity of any lost business, or evidence that it would have been selected by the unnamed customers. G/S offers no evidence suggesting how its lost profits could be computed. *See Hill v. Brown*, 166 Ill.App.3d 867, 520 N.E.2d 1038, 1044 (1988) (expert testimony computing losses from anticipated embryos expected to be produced by breeding cow, based on production rates of breeding cow's mother, was speculative as cow had never produced a viable embryo).

Accordingly, such unsupported, speculative opinions as to G/S's alleged lost opportunities should be excluded as they lack foundation, are speculative, irrelevant, and unfairly prejudicial under Fed. R. Evid. 401-403. Indeed, not only would such testimony confuse and prejudice the jury, but this Court already rejected Plaintiff's effort to assert claims for such unsubstantiated business opportunities and Plaintiff should thus be barred from making such speculative claims at trial. (Dkt. # 35 at 19-20).

**I.     Any Evidence, Argument or Comment Upon Mr. Kunkel's Wife and Children, Including Foster Children and Adopted Children.**

The Court should exclude any evidence concerning Mr. Kunkel's wife, as well as evidence concerning his children, including foster children and adopted children, as such evidence is not relevant to this matter. Plaintiff intends to falsely imply that Kunkel abused his wife children to prejudice the jury to obtain a verdict based on bias, in disregard of the facts. Kunkel has never abused his family members. Plaintiff's plan to insinuate such abuse is malicious, unprofessional and improper under Fed. R. Civ. P. 403. *See Doe v. Tag, Inc.*, No. 92 C 7661, 1993 WL 484212, at *3-4 (N.D. Ill. Nov. 18, 1993) (excluding evidence of past "arrest and conviction . . . for sexually abusing a foster child" because this evidence "could confuse the issues or shift the jury's focus," and its probative value was "substantially outweighed by the risk of undue prejudice"); *United States v. Pepin*, 514 F.3d 193, 206 (2d Cir. 2008) (affirming district court's decision "to exclude evidence as to child abuse and the prior child endangerment conviction" from trial). Kunkel's circumstances are more compelling because he has never been accused or arrested or convicted of abuse of his wife or his children.

**J.     The Court Should Exclude Argument or Evidence of Alleged Hearsay from Mahaney's Conference Call with Gavin.**

Plaintiff claims that Mahaney purportedly said, during a conference call with Gavin, that there was "this nonsense going on with these young boys." The statement is not only hearsay, but there is nothing else in the conversation or documents related to the conversation that indicates what the "nonsense" was or that supports a claim that those words were ever in fact uttered by Mahaney. Mahaney's advisors who were involved in the conference call do not support the false hearsay statement and, indeed, have attested to the fact that Mahaney did not discuss anything to do with any purported sexual abuse, harassment or inappropriate conduct by Kunkel during the call with Gavin. *See,* Grenko Affidavit, Dkt. # 101 ¶ 20 ("Mahaney never said that Kunkel had

13

sexually harassed, abused or otherwise acted inappropriately toward any Soo Tractor employee when we discussed Exhibits 19 and 56 [to November 14, 2014 Memorandum and Meeting Agenda] or planned the agenda. Mahaney never told me that such allegations against Kunkel were a reason he wanted Gavin to replace Kunkel. Neither Mahaney nor anyone else mentioned that in the discussion with Gavin.").

The corresponding November 14, 2014 Memorandum from Mahaney detailing his complaints does not in fact reference any "nonsense . . . with young boys." Moreover, there is nothing in the correspondence with Mahaney's counsel to corroborate the hearsay. Nor do any of the other participants in the call (specifically, Mr. Mahaney's legal counsel, John Anderson) recall any such statement or discussion about Kunkel other than that Mahaney felt that "Kunkel was not doing a proper job." (Dkt. # 99, Ex. F. at 58-59). In short, such testimony is hearsay and unsupported by any exception. Fed. R. Evid. 801-803. Similarly, the Court should exclude any evidence that a given witness heard anyone else refer to various employees as "Steve's Boys" as such is similarly hearsay.

**K.    The Court Should Exclude Argument or Evidence of Alleged Fraud by Kunkel.**

Any evidence or argument that Mr. Kunkel submitted fraudulent, false or inaccurate invoices is not relevant to any claims at issue in this case, as the Court dismissed Plaintiff's fraud claims. (Dkt. # 35 at 21-25); *see Best v. Indiana Dep't of Corr.*, 1:16-cv-02549, 2019 WL 3500938, at *3 (S.D. Ind. Aug. 1, 2019) ("Testimony or evidence about dismissed or denied claims is irrelevant and highly prejudicial and would result in confusion of the issues."); *Lewis v. Sch. Dist. # 70*, 05-CV-776, 2009 WL 10690811, at *5 (S.D. Ill. Apr. 6, 2009) (granting motion to exclude "evidence, argument or suggestion regarding all claims previously dismissed or upon which final judgment has been entered"). Simply put, any evidence pertaining to dismissed claims should also be excluded as irrelevant.

### III. CONCLUSION

Based on the foregoing analysis, the law requires exclusion of the evidence as set forth herein. Kunkel requests that the Court exclude at trial any evidence, examination, exhibits, testimony, comment, or argument regarding the above topics or "evidence" during opening and closing statements, voir dire, or otherwise. Kunkel respectfully requests the Court to enter an Order granting its Motion in Limine.

DATED this 26th day of February, 2020.

STEPHEN L. KUNKEL, Defendant,

By: s/Michael Z. Gurland
Michael Z. Gurland (IL # 6274400)
The Gurland Law Firm
141 North Clay St.
Hinsdale, IL  60521
Phone: 312-420-8812
mzg@gurlandlawfirm.com

and

Christopher R. Hedican
(admitted *pro hac vice*)
IOWA Bar NO (16999)
BAIRD HOLM LLP
1700 Farnam St, Ste 1500
Omaha, NE  68102-2068
Phone: 402-344-0500
Facsimile:  402-344-0588
chedican@bairdholm.com

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| GAVIN/SOLMONESE, LLC, | ) |
|       Plaintiff, | ) Case No. 16-CV-1086 |
| v. | ) |
| | ) Judge Martha Pacold |
| STEPHEN L. KUNKEL, | ) |
|       Defendant. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2019, I served the foregoing via electronic mail to:

Amy L. Hunter
Veronica K Couzo
Christopher B. Wilson
Craig T. Boggs
Eric E. Walker
Brian L. Shaw

By: s/Michael Z. Gurland
    Michael Z. Gurland (IL # 6274400)
    The Gurland Law Firm
    141 North Clay St.
    Hinsdale, IL 60521
    Phone: 312-420-8812
    mzg@gurlandlawfirm.com